**METRO WASTEWATER RECLAMATION DISTRICT, formerly known as Metropolitan Denver Sewage Disposal District No. 1, a political subdivision of the State of Colorado, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, National Fire Insurance Company of Hartford, United States Fire Insurance Company, Fireman's Fund Insurance Company and Hartford Accident and Indemnity Company, Defendants.**

No. 89-C-895.

United States District Court, D. Colorado.

Sept. 23, 1993.

See also 142 F.R.D. 471.

Joel Moritz, Denver, CO, for plaintiff.

Robert Carlson, Denver, CO, Lawrence Levy, Uniondale, NY, Darrell Daley, Denver, CO, Joanne Zboyan, Englewood, CO, Ira Goldberg, Long & Levitt, San Francisco, CA, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Metro Wastewater Reclamation District (Metro), a political subdivision of the State of Colorado, commenced this action against its insurers asserting claims for (1) declaratory judgment, (2) specific performance and (3) breach of contract.

Defendants are Continental Casualty Company, an Illinois corporation with its principal place of business in that state; National Fire Insurance Company of Hartford, a Connecticut corporation with its principal place of business in Illinois;[1] United States Fire Insurance Company (US Fire), a New York corporation with its principal place of business in New Jersey; Fireman's Fund Insurance Company (Fireman's), a California corporation with its principal place of business in that state; and Hartford Accident and Indemnity Company (Hartford), a Connecticut corporation with its principal place of business in that state.

Plaintiff has filed a motion for partial summary judgment regarding the defendants' duty to defend the plaintiff under various insurance policies. Defendants have responded by opposing that motion and by each cross-moving for summary judgment on all claims. Plaintiff has subsequently filed a supplemental motion for partial summary judgment on the duty to defend issue, which the defendants also have opposed. Each defendant also has filed a motion for summary judgment regarding "pollution exclusion" and "occurrence" clauses in the insurance contracts. Plaintiff has responded by opposing those motions.

The issues have been fully briefed and oral argument was heard August 25, 1993. Diversity jurisdiction is alleged under 28 U.S.C. § 1332.

## I. *Background.*

Since 1966, Metro has provided sewage treatment for the Denver metropolitan area. From 1969 until 1986, Metro disposed of processed sewage sludge in various locations at the Lowry Bombing Range (Lowry). Metro placed its sludge into Section 6 at Lowry during the years 1971 through 1980.

In 1984, the United States Environmental Protection Agency (EPA) included a portion of Section 6 (the Lowry site) on the national priorities list pursuant to the Comprehensive Environmental Response Compensation and

Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*

The EPA sent Metro a "general notice letter" dated May 18, 1988, informing it of potential liability at the Lowry site. On June 24, 1988, the EPA sent Metro a "Special Notice" letter pursuant to § 122 of CERCLA naming Metro as potentially liable for the release or threatened release of hazardous substances at Lowry. The EPA's special notice letter initiated a sixty day period of formal negotiations between a group of twenty-eight potentially responsible parties at Lowry regarding the performance and financing of work related to clean-up operations at the Lowry site.

During the period in which Metro was disposing of its sludge at Lowry, the defendants provided its comprehensive general liability (CGL) insurance coverage. In mid-August 1988, Metro, through its insurance broker, filed formal notices of claims with all the defendants. Defendants all reserved their rights under their respective policies.

## II. *Analysis.*

Summary judgment is appropriate if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

Determination of the issues in this case is dependent upon the terms of the insurance policies involved. Since federal jurisdiction is founded on diversity of citizen-

---

1. Continental Casualty Company and National Fire Insurance Company of Hartford will be referred to collectively as CNA.

ship, the insurance contracts must be interpreted under Colorado law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Interpretation of insurance contract terms is based upon the familiar principles of contract interpretation. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991). Contract language is to be interpreted according to its plain and ordinary meaning whenever possible. *Chacon v. American Family Mutual Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). If language is ambiguous, it must be construed against the insurer. *Hecla*, 811 P.2d at 1090. Terms are ambiguous when they are susceptible to more than one reasonable interpretation. *Id.* at 1091. Mere disagreement among the parties does not create an ambiguity. *Kane v. Royal Ins. Co.*, 768 P.2d 678, 680 (Colo.1989).

2. CNA's, Fireman's, and Hartford's policies contained the following duty-to-defend provision:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
 A. bodily injury or
 B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient...." (Plaintiff's Summary Judgment Exs. 2A, 2E and 2P).

US Fire provided Metro comprehensive general umbrella liability coverage. That umbrella policy provided that:

"With respect to any occurrence covered by the terms and conditions of this policy, but not covered, as warranted, by the underlying policies listed in Schedule A thereof or not covered by any other underlying insurance collectible by the insured, the company shall:
 (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient; ...." (Plaintiff's Summary Judgment Ex. 2Q.)

3. Fireman's and CNA's policies contain the following personal injury endorsement:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sus-tained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

 \* \* \* \* \* \*

wrongful entry or eviction, or other invasion of the right of private occupancy;

 \* \* \* \* \* \*

... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient...." (Plaintiff's Supplement to Summary Judgment Ex. A).

Hartford's policy included a similar endorsement:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of any such injury, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ..." *Id.*

Hartford's policies define "personal injury," in pertinent part, as an

"injury arising out of one or more of the following offenses committed during the policy period:

 \* \* \* \* \* \*

wrongful entry or eviction or other invasion of the right of private occupancy." *Id.*

## A. Are the EPA's actions a "suit?"

■ Each of the relevant duty-to-defend provisions in this action state that "the company shall have the right and duty to defend any *suit* against the insured seeking damages." (emphasis added). Plaintiff's motion for partial summary judgment asserts that the defendants had a duty to defend the plaintiff against the EPA pursuant to the property damage liability coverage provisions of the policies at issue.[2] Plaintiff's supplemental motion for partial summary judgment makes the same argument under the personal injury liability coverage provisions of the relevant policies.[3]

Defendants, in their responses to the plaintiff's motion and in their cross-motions for summary judgment, assert that the duty to defend arises only from a "suit," and that no suit exists here.

Colorado has not addressed the question of whether an EPA enforcement action is a "suit" under the terms of a CGL policy. The myriad of courts that have considered the issue of whether EPA actions are suits are divided in their result. *See, e.g., Ryan v. Royal Ins. Co.,* 916 F.2d 731 (1st Cir.1990) and cases cited therein.

 Resort to dictionary definitions of a term is proper to determine the plain and ordinary meaning of words. *Hecla,* 811 P.2d at 1091. Dictionary definitions are consistent in defining "suit" as a process or action *in a court. See, e.g., Webster's Third New International Dictionary* (1966) ("an action or a process in a court for the recovery of a right or claim: a legal application to a court for justice."). There is no allegation of a process or action in a court in this case. Plaintiff has pointed to no common definitions of the word "suit" that could encompass the EPA action at issue here.

Plaintiff argues that the term "suit" is ambiguous because Fireman's policies included an arbitration provision, which states that "suit includes an arbitration proceeding...." Hartford's policy also contained an arbitration provision. Plaintiff's argument, however, supports the defendants' position that no ambiguity exists. The fact that arbitration is specifically referenced elsewhere in the policies strongly implies that other extra-judicial proceedings are not so included.

Furthermore, all the policies at issue allow the insurer to make investigations and settlements "of any claim or suit." Thus, the meaning of "suit" is further narrowed to mean some process beyond a mere claim. Contract provisions may not be read in isolation, but must be read as a whole. *Urtado v. Allstate Ins. Co.,* 187 Colo. 24, 528 P.2d

222, 223 (1974). All provisions of the policies should be considered and given effect. *Chacon,* 788 P.2d at 752. Were the duty to defend obligation triggered by submission of the EPA's claims and demands alone, the use of the word "claim" would be superfluous.

I find and conclude that the Colorado Supreme Court would interpret the word "suit" in its plain and ordinary meaning and hold that "suit" does not encompass the EPA proceeding alleged here. Thus, I conclude the defendants had no obligation to defend the plaintiffs under either the property damage liability coverage provisions or the personal injury liability coverage provisions.[4] Accordingly, the plaintiff's motion for partial summary judgment and supplemental motion for partial summary judgment will be denied, and the defendants' cross-motions for summary judgment will be granted to the extent they seek judgment on the plaintiff's claims of a duty to defend.[5]

**B. Are CERCLA response costs "damages?"**

 ·Defendants, except US Fire, in their cross-motions for summary judgment, argue that CERCLA response costs are not "damages."[6] The Colorado Supreme Court has not addressed the question whether CERCLA response costs are damages under the terms of a CGL policy.

Although courts around the country are split on this issue, the majority position is that response costs are damages. *See Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 944 F.2d 940, 946 (D.C.Cir.1991) and cases cited therein. *Contra Grisham v. Commercial Union Ins. Co.,* 951 F.2d 872, 875 (8th Cir.1991).

---

**4.** Because I conclude there is no "suit" that triggers the duty to defend, I do not address the validity of the plaintiff's contention that the personal injury liability coverage provisions apply to actions alleged here. This contention was raised only in the context of a duty to defend. (Plaintiff's reply in support of its supplemental motion for partial summary judgment on the duty to defend based on the personal injury liability endorsement.)

**5.** Because I conclude that no duty to defend has arisen under any of the policies at issue here, I

need not decide US Fire's assertion that, as an umbrella insurance carrier, its duty to defend does not arise until there has been a determination of the underlying carriers' duty to defend.

**6.** Plaintiff's complaint also seeks indemnification under the policies for response costs paid as a result of the EPA's action. "The duty to defend and the duty to indemnify are separate and distinct." *Hecla,* 811 P.2d at 1086 n. 5. Accordingly, I consider the remaining issues raised in the parties' various motions in relation to the duty to indemnify.

Dictionary definitions of the word "damages" indicate that the plain meaning of the term would include response costs. *See, e.g., Webster's Third New International Dictionary* (1966) ("the estimated reparation in money for a detriment or injury sustained"); *see also Independent Petrochemical Corp.,* 944 F.2d at 945. Defendants argue that the only definition of damages that should be considered is the technical, legal definition of remedies at law, as opposed to equitable remedies, such as response costs. *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.,* 842 F.2d 977 (8th Cir.1988) (en banc); *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348 (4th Cir.1987). However, the cases upon which the defendants rely have been severely criticized by courts interpreting the laws of states that adhere to the plain meaning rule of contract interpretation. *See Aetna Casualty & Surety Co. v. Pintlar Corp.,* 948 F.2d 1507 (9th Cir.1991); *Independent Petrochemical Corp.,* 944 F.2d at 946.

■ Here, defendants, as drafters of the policy, should have used clear, explicit language to exclude coverage for equitable relief if they so intended. The relevant insurance policies here do not include a definition of damages. Absent any exclusionary language in the policies, the term "damages" should be given its plain meaning rather than the technical definition proposed by the defendants.

Thus, I conclude that the Colorado Supreme Court would adhere to the plain meaning of the term "damages" and include CERCLA response costs within that definition. Accordingly, the defendants' cross motions for summary judgment on this issue will be denied.

### C. Was the plaintiff's notice unreasonably late?

■ Hartford and Fireman also contend that the plaintiff failed to provide prompt and adequate notice as required by their policies, and therefore Metro's claims should be barred.[7] Plaintiffs contend that the notice provided to the defendants was adequate. I find and conclude that, under the terms of the relevant policies, genuine issues of material fact exist as to this assertion. Accordingly, Hartford's and Fireman's cross-motions for summary judgment will be denied as to this issue.

### D. Was there an "occurrence?"

■ Defendants motions for summary judgment assert that there is no coverage under the CGL policies because there was no "occurrence" to trigger coverage.[8] Under the terms of the CGL policies, the issue is whether the damages caused by Metro's actions were "expected or intended." *See Hecla,* 811 P.2d at 1088 n. 7. Thus, Metro's damages would not be covered if it knew that they would flow directly and immediately from Metro's intentional acts. *Id.* at 1088.

The parties have presented voluminous contradictory evidence regarding whether Metro knew damages would flow directly and immediately from its intentional acts. Ac-

7. Hartford's policy contains the following notice provision in the case of an occurrence, claim or suit:

"In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable." (Hartford's Summary Judgment Ex. F).

Fireman's policies contained the following notice provision in the event of a claim or suit: "If a claim is made or a suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representatives." (*See, e.g.,* Plaintiff's Summary Judgment Ex. F.)

8. CNA's and US Fire's policies defined "occurrence" as follows:

"an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury· or property damage *neither expected nor intended* from the standpoint of the insured." (Plaintiff's Summary Judgment Exs. 2A and 2Q) (emphasis added). Fireman's and Hartford's policies defined that term as:

"an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured." (Plaintiff's Summary Judgment Exs. 2E and 2P) (emphasis added).

**1260**

cordingly, genuine issues of material fact exist on whether there was an "occurrence" that triggered coverage under the relevant policies, and the defendants' summary judgment motions based on this argument must be denied.

### E. Does the "pollution exclusion" clause apply?

 Defendants' motions for summary judgment also contend that the pollution exclusion clauses in their policies preclude coverage. Those clauses exclude coverage for the discharge of "waste materials or other irritants, contaminants or pollutants" unless that discharge is "sudden or accidental." The Colorado Supreme Court has held that "sudden or accidental" is ambiguous and has interpreted that term to mean that the discharge was unexpected and unintended. *Hecla*, 811 P.2d at 1088 n. 7, 1092.

Plaintiff does not contend that the discharge at issue here was "sudden or accidental." Rather, the plaintiff maintains that the sewage sludge it placed at the Lowry site is not "waste materials or other irritants, contaminants or pollutants." While this argument may not be overpowering, the plaintiff has supplied evidence establishing a genuine issue of material fact regarding whether the sewage sludge falls within the plain meaning of "waste materials or other irritants, contaminants or pollutants" because it was applied for a beneficial use. Accordingly, the defendants' motions for summary judgment on this ground must be denied.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's motion for summary judgment and supplemental motion for partial summary judgment is denied;

(2) Defendants' cross motions for summary judgment are granted in part and denied in part;

(3) Judgment shall enter on behalf of the defendants and against the plaintiff on the plaintiff's claims that, at this time, the defendant owes the plaintiff a duty to defend;

(4) Defendants' motions for summary judgment on the occurrence and pollution exclusion issues are denied;

(5) Plaintiff's motion for certification of questions of state law to the Colorado Supreme Court and stay pending determination, as well as the defendants' joint motion for reference of the pending summary judgment motions to the magistrate judge are denied; and

(6) The parties and their counsel are ordered to meet and confer as soon as possible in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within five days of this order stating the results of their settlement negotiations and whether an additional conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.