*796 OPINION OF THE COURT
Allan L. Winick, J.
Defendant moves to consolidate two actions arising out of similar incidents. Defendant also moves to dismiss the complaint in each of the actions.
Plaintiff cross-moves for summary judgment in each of the actions. Plaintiff has no opposition to the joinder of the two actions.
Plaintiff, Incorporated Village of Cedarhurst, has commenced two separate declaratory judgment actions which arose by reason of the disclaimer of insurance coverage by defendant Hanover Insurance Company. The instant actions were commenced as a result of two separate negligence actions against the Village which are pending in this court (Longwood Assoc. v Village of Cedarhurst, index No. 9927/93; Yules v Incorporated Vil. of Cedarhurst, index No. 22390/92).
In the Longwood action (supra), plaintiff contends that it suffered property damage as a result of an overflow of sewage from a sewer system owned and/or maintained by the Incorporated Village of Cedarhurst. In the Yules action (supra), plaintiffs contend that they suffered both property damage and personal injury as a result of flooding caused by a break or leak in the sewer system owned, operated and controlled by the Incorporated Village of Cedarhurst.
The declaratory judgment actions turn upon the question of whether exclusionary language contained in the Hanover Insurance policy applies. Defendant argues that the language of its policy is such that it does not have to defend or indemnify the plaintiff for these incidents. The same policy is applicable in both cases. However, with respect to the Long-wood action (supra), an umbrella policy issued by Hanover is also in existence concerning which defendant raises the same argument.
The policy language in question is as follows (primary policy):
"2. exclusions this insurance does not apply to: * * *
"f. (1) 'Bodily injury’ or 'property damage’ arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants: * * *
"(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible.”
*797 The umbrella policy has the following language:
"b. (1) 'Bodily injury’, 'property damage’ or 'personal injury’ arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled and reconditioned or reclaimed.”
Defendant Hanover argues that items which travel through a municipal sewer system under any definition are "waste” and a pollutant is a waste material which contaminates air, soil or water.
Plaintiff argues that the two underlying actions sound in negligence, to wit: failure to maintain pipes and a sewer system. Such conduct, plaintiff contends, is clearly covered under the subject insurance policy. Plaintiff alleges that under any interpretation the word "pollutants” is distinguishable from "waste”, i.e., that the insurance policy definition of pollutants was never intended to include human waste. Plaintiff argues, also, that in any event, the duty to defend is much broader than an insurance company duty to indemnify.
It is the rule in construing insurance policies that any ambiguity shall be construed against the company which wrote the policy. (Miller v Continental Ins. Co., 40 NY2d 675, 678.) This is especially true with respect to exclusionary clauses. The excluded categories must be defined with careful particularity before a claimed exclusion will be given effect. That principle is akin to the proposition that if exclusion of liability is intended, which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known. (Sperling v Great Am. Indem. Co., 7 NY2d 442, 447.)
"The tests to be applied in construing an insurance policy are common speech (Lewis v Ocean Acc. & Guar. Corp., 224 NY 18, 21) and the reasonable expectation and purpose of the ordinary businessman (Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 47, 51). The ambiguities in an insurance policy are, moreover, to be construed against the insurer, particularly when found in an exclusionary clause (see Breed v Insurance Co., 46 NY2d 351, 353).” (See, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398.)
"Where an insurance policy includes the insurer’s promise to defend the insured against specified claims as well as to *798 indemnify for actual liability, the insurer’s duty to furnish a defense is broader than its obligation to indemnify. (International Paper Co. v Continental Cas. Co., 35 NY2d 322, 326; Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368.) The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be. (Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 154.) The duty is not contingent on the insurer’s ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy’s general coverage or within its exclusory provisions. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased. (Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663, 669-670; Schwamb v Fireman’s Ins. Co., 41 NY2d 947, 949; Utica Mut. Ins. Co. v Cherry, 38 NY2d 735, 737; Prashker v United States Guar. Co., 1 NY2d 584, 590, 592.) Though policy coverage is often denominated as 'liability insurance’, where the insurer has made promises to defend 'it is clear that [the coverage] is, in fact, "litigation insurance” as well.’ (International Paper Co. v Continental Cas. Co., supra, at p 326.) As such, '[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer’s responsibility to pay, there is no doubt that it is obligated to defend.’ (Schwamb v Fireman’s Ins. Co., supra, at p 949.)
"Moreover, whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so 'in clear and unmistakable’ language. (Kratzenstein v Western Assur. Co., 116 NY 54, 59; see, also, Hartol Prods. Corp. v Prudential Ins. Co., 290 NY 44, 49-50.) Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. (Taylor v United States Cas. Co., 269 NY 360, 363; Griffey v New York Cent. Ins. Co., 100 NY 417, 421; Rann v Home Ins. Co., 59 NY 387, 389; see, also, Wagman v American Fid. & Cas. Co., 304 NY 490.) Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case (Neuwirth v Blue *799 Cross & Blue Shield, 62 NY2d 718; Prashker v United States Guar. Co., 1 NY2d 584, 592, supra; Slocovich v Orient Mut. Ins. Co., 108 NY 56, 66), and that they are subject to no other reasonable interpretation (cf. International Paper Co. v Continental Cas. Co., supra, at p 325; Hoffman v Aetna Fire Ins. Co., 32 NY 405, 413-415).” (See, Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 310-311.)
Moreover, when an exclusionary clause is relied on to deny coverage, the insurer has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, that the allegations, in toto, are subject to no other interpretation. (Technicon v American Home Assur. Co., 74 NY2d 66, 73-74.)
Unlike Technicon (supra) the instant case does not deal with the issue of "What is an accidental discharge?” Although a similarity exists, since the instant policies contain a "pollution” exception clause, a municipality is not within the class which the Legislature was attempting to regulate.
The Incorporated Village of Cedarhurst is not a commercial or industrial enterprise. The exclusionary clause relied upon by the defendant was required by the Insurance Law. The origin of this exclusion is statutory and was required in all policies issued to commercial or industrial enterprises. (Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, lv dismissed 54 NY2d 831.) It was calculated to buttress New York’s strict environmental protection standards. These standards could be undermined if commercial enterprises were able to purchase insurance to protect themselves from liability arising from their polluting the environment. (Niagara County v Utica Mut. Ins. Co., supra, at 418.) The pollution exclusion clause* was intended to apply only to actual polluters. (Autotronic Sys. v Aetna Life & Cas., 89 AD2d 401.) The clear purpose of the exclusion was to strengthen New York’s environmental protection standards by imposing the full risk of loss due to personal injury or property damage upon the commercial or industrial enterprises that do the polluting and attempt to eliminate that risk through insurance coverage (see, Governor’s Mem approving L 1971, ch 765, 1971 NY Legis Ann, at 353-354, 1971 McKinney’s Session Laws of NY, at 2633). The legislative purpose would not be served by applying the exclusion to insureds who are not engaged in the industrial or *800 commercial activity which produces the pollution, although their acts of commission or omission may have resulted in bodily injury or property damage arising out of pollution. (Autotronic Sys. v Aetna Life & Cas., supra, at 403.) In order to invoke the exclusion, the insurer must demonstrate that " 'the intent of the "pollution exclusion” clause was to eliminate coverage for damages arising out of pollution or contamination by industry-related activities’ ” (Continental Cas. Co. v Rapid-American Corp., 177 AD2d 61, 69).
Plaintiff is not an industrial or commercial enterprise that creates pollution or waste. It is either the owner or responsible party for maintaining a municipal sewer system which carries waste from householders and other users in the Village. The instant case is unlike the case of Powers Chemco v Federal Ins. Co. (144 AD2d 445, affd 74 NY2d 910). In Powers, the Court declared that the defendant was not obligated to indemnify, and that the pollution exclusion clause applied to an industrial business that inherited the pollution problem from a prior landowner. The instant case is quite different. Defendant relies on the dictionary definition of waste and pollutants. There is no definition in the policy. This municipality does not intentionally place pollutants or waste into the sewer system. By-products are disposed of by the residents and commercial businesses of the Village. Garbage, trash and undigested residue of food eliminated from the body cannot specifically be listed in the policy definition of pollutants. Nor are they generally understood to be such in ordinary usage. The only interpretation that can be meaningful is if the damage or injury resulted from "a poisoning, internal or external, caused by a * * * chemical-like substance contained in the definition of pollutants or similar to those listed”. (See, Oates v State of New York, 157 Misc 2d 618, 623.)
The injury or damages here did not result from a pollutant by poisoning or chemically contaminating in a traditional sense.
The pollutant clause contained in the policies in question is inapplicable to this incident.
In both actions the defendant’s motion to dismiss is denied and the plaintiff’s cross motion for summary judgment is granted.
Settle judgment declaring that defendant is obligated to defend both underlying actions, and indemnify the plaintiff herein from any judgment in the underlying actions within *801 the policy limits, and directing defendant to reimburse counsel for plaintiff for expenses and reasonable attorneys’ fees, already incurred in the defense of the underlying actions, to be fixed at a hearing to be held by the court or upon submission of an attorney’s affirmation of legal services, if the parties stipulate to that procedure.
The motion to consolidate is denied as moot.

 The mandatory aspect of former Insurance Law § 46 (now Insurance Law § 1113) was repealed in 1982 (L 1982, ch 856).