**CITY OF ENGLEWOOD, Colorado, a municipal corporation, Plaintiff–Appellant,**

**and**

**City of Littleton, Colorado, a municipal corporation, Plaintiff–Appellant and Cross–Appellee,**

v.

**COMMERCIAL UNION ASSURANCE COMPANIES, a/k/a Commercial Union Insurance Company, a/k/a Employer's Fire Insurance Company, a Massachusetts corporation; The Hartford Accident and Indemnity Company, a Connecticut corporation; Fireman's Fund Insurance Companies, a California corporation; The American Insurance Company, a New Jersey corporation; Compass Insurance Company, a New York corporation; American States Insurance Company, an Indiana corporation; American Reinsurance Company, a/k/a American Excess Insurance Company, a Delaware corporation, Defendants–Appellees,**

**and**

**Guaranty National Insurance Company, a Colorado corporation, Defendant–Appellee and Cross–Appellant.**

No. 93CA1923.

Colorado Court of Appeals, Div. V.

July 11, 1996.

As Modified on Denial of Rehearing Dec. 5, 1996.

Certiorari Granted July 28, 1997.

Martin Semple, Acting City Attorney, Daniel L. Brotzman, Assistant City Attorney, Englewood, Anderson, Kill, Olick & Oshinsky, P.C., Edward M. Joyce, Roberto Velez, Mayda Prego, Michelle Perez, New York City, for Plaintiff–Appellant City of Englewood.

Berkowitz, Brady & Backus, P.C., Larry W. Berkowitz, William J. Brady, Denver, for Plaintiff–Appellant and Cross–Appellee City of Littleton.

Montgomery, Green, Jarvis, & Kolodny, James K. Green, Joyce L. Jenkins, Denver, for Defendant–Appellee Commercial Union Assurance Companies, a/k/a Commercial Union Insurance Company.

Pryor, Carney and Johnson, P.C., Joanne M. Zboyan, Englewood, for Defendant–Appellee Hartford Accident and Indemnity Company, a Connecticut corporation.

Cook, Kotel & Fitch, Randy D. Kotel, Denver, Kaufman & Logan, W. Martin Tellegen, Jeffrey S. Gubernick, San Francisco, California, for Defendant–Appellee Fireman's Fund Insurance Companies, a California corporation.

Cooper & Clough, P.C., John E. Clough, Denver, Wilson, Elser, Moskowitz, Edelman & Dicker, Stephen D. Straus, New York City, for Defendant–Appellee Compass Insurance Company, a New York corporation.

Anderson, Campbell & Laugesen, P.C., Richard W. Laugesen, Denver, Bingham, Summers, Welsh & Spilman, Martha S. Hollingsworth, James M. Hinshaw, Indianapolis, Indiana, for Defendant–Appellee American States Insurance Company, an Indiana corporation.

Law Office of Diana L. Terry, Diana L. Terry, Denver, for Defendant–Appellee and Cross–Appellant Guaranty National Insurance Company, a Colorado corporation.

Law Firm of Kevin S. Hannon, Kevin S. Hannon, Denver, Gorsuch Kirgis L.L.C., Peter R. Nadel, Denver, for Amicus Curiae Colorado Trial Lawyers Association.

Inman Flynn & Biesterfeld, P.C., Joel A. Moritz, Richard P. Brentlinger, Michael J. Glade, Robert J. Thomas, Denver, for Amicus Curiae Colorado Municipal League.

White & Steele, P.C., Frederick W. Klann, George A. Codding, III, Denver, Wiley, Rein & Fielding, Laura A. Foggan, John E. Barry, Russell Sullivan, Washington, DC, for Amicus Curiae Insurance Environmental Litigation Association.

Long & Jaudon, Dennis W. Brown, Denver, Harwood Lloyd, Edward Zampino, Victor C. Harwood, III, Peter E. Mueller, Hackensack, New Jersey, for Amicus Curiae Aetna Casualty and Surety Company.

No Appearance for Defendant–Appellee American Insurance Company, a New Jersey corporation.

Opinion by Judge ROTHENBERG.

In this consolidated appeal, plaintiffs, City of Littleton and City of Englewood (cities), appeal from a summary judgment in favor of defendants, Commercial Union Assurance Companies, a/k/a Commercial Union Insurance Company, a/k/a Employer's Fire Insurance Company (Commercial Union); the Hartford Accident and Indemnity Company (Hartford); Fireman's Fund Insurance Companies (Fireman's Fund); the American Insurance Company (American); Compass Insurance Company (Compass); American States Insurance Company (American States); American Reinsurance Company, a/k/a American Excess Insurance Company (American Excess); and Guaranty National Insurance Company (Guaranty National). Guaranty National cross-appeals. We affirm in part, reverse in part, and dismiss the cross-appeal.

This action concerns the availability of insurance coverage under several Comprehensive General Liability (CGL) insurance policies for environmental response costs sought from the cities by the Environmental Protection Agency (EPA) pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq. (1988).

At issue here is whether EPA letters sent to the cities alleged claims for liability which potentially come within the coverage provided by the defendants' insurance policies. The trial court determined that none of the insurers had either a duty to defend or a duty to indemnify the cities. We hold that defendants Hartford, Fireman's Fund, and American insurers have a duty to defend, and that the determination of the duty to indemnify as to all insurers was premature.

## I. Factual Background

In 1973, Englewood and Littleton entered into an agreement to build and operate the Bi–City Waste Treatment Facility (Bi–City Plant), which was designed to process sewage sludge from the cities of Englewood and Littleton. From April 1, 1977, through the early summer of 1980, the cities disposed of municipal sludge at the Lowry Landfill.

Defendant insurance companies issued CGL insurance policies to the cities and/or the Bi–City Plant during the relevant period. Between 1971 and 1986, virtually all insurance companies issued a standard-form CGL insurance contract produced by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau. *See Broderick Investment Co. v. Hartford Accident & Indemnity Co.*, 954 F.2d 601 (10th Cir.) (fn. 1), *cert. denied*, 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992).

In 1984, the EPA determined that a release of hazardous substances had occurred at the Lowry Landfill. In 1985, it notified Englewood that it was a "Potentially Responsible Party" (PRP) under CERCLA. Alleging that Englewood had generated, transported, or disposed of waste that caused property damage at the landfill site, the EPA informed Englewood it was potentially jointly and severally liable for the cleanup costs.

In May 1988, the EPA sent separate letters to Englewood and Littleton notifying them of their potential liability for costs of remediation and other damages at the Lowry Landfill. In June, the EPA also sent a letter to the Bi–City Plant advising it that it was potentially liable for the environmental damage at the landfill. The EPA stated it had reason to believe the Bi–City Plant "arranged by contract, agreement, or otherwise, for the disposal, treatment, or transportation of hazardous substances found at the facility."

The cities notified defendant insurance companies of the EPA action in sending the PRP letters and sought coverage under the policies. Defendant Commercial Union originally agreed to defend Englewood subject to a reservation of rights, but later withdrew its defense of the action. The remaining defendant insurance companies refused to defend the cities.

The cities then filed this action against the insurance companies seeking a declaration of their rights and responsibilities under the liability insurance policies, specific performance of those policies, and indemnification for clean-up of pollutants at the landfill.

They incorporated into their complaint the same allegations contained in the EPA notices sent to them:

EPA has asserted that numerous parties, including [the cities] disposed of waste at the Lowry Landfill and that said waste, including the [cities'] municipal sewage sludge, contained hazardous substances, pollutants, or contaminants, and as such, the [cities] may be liable for costs of remediation and other damage pursuant to CERCLA. . . .

Englewood filed a motion for partial summary judgment, seeking an order requiring the insurance companies to defend it with respect to the EPA action. That motion was denied by the court.

Compass, Commercial Union, and American Excess filed cross-motions for summary judgment on the duty to defend and the duty to indemnify asserting, *inter alia*, that because the Bi–City Plant was a joint venture, it was not covered under the "persons insured" provision of the policies.

In disposition of these motions, the trial court granted summary judgment in favor of defendants Compass, Commercial Union, and American Excess on the duty to defend. It found that: (1) the Bi–City Plant was a joint venture; (2) the policies expressly excluded coverage of joint ventures which are not

designated in the policy as the named insured; and (3) on that basis, the cities were not entitled to coverage for their landfill cleanup liabilities.

The court also granted the cross-motions for summary judgment of Compass, Commercial Union, and American Excess on an alternative basis, finding there was no duty to defend or to indemnify plaintiffs because the policies' pollution exclusion clauses were applicable so as to preclude coverage.

Hartford then filed a motion for clarification or, in the alternative, for summary judgment on all claims based on the pollution exclusion in its policy. The trial court granted Hartford's motion for summary judgment, again finding no duty to defend or to indemnify.

Similarly, Fireman's Fund, American, American States, and Guaranty National filed a joint motion for summary judgment on all claims based on the pollution exclusion clause. American States and Guaranty National alternately moved for summary judgment based on the joint venture clause. The trial court granted the motion based on the pollution exclusion clause and did not rule on American States' or Guaranty's motions based on the joint venture clause.

Littleton also filed a motion for partial summary judgment contending that the pollution exclusion clause should be construed against the defendants as a matter of law. That motion was denied.

On September 28, 1993, the court granted the cities' motion for C.R.C.P. 54(b) certification.

## II. Standard of Review

Summary judgment is proper when the pleadings, affidavits, depositions, and admissions show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the initial burden to show there is no genuine issue of material fact. Once the moving party has met this initial burden, the burden then shifts to the nonmoving party to establish there is a triable issue of fact. *Jones v. Board of Education,* 854 P.2d 1386 (Colo.App.1993).

In determining whether summary judgment is proper, the nonmoving party must receive the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts and a reviewing court must resolve all doubts as to whether an issue of fact exists against the moving party. *Jones v. Board of Education, supra.*

The interpretation of a contract, including an insurance contract, is a matter of law which may be reviewed *de novo* to determine if plaintiffs' claims are excluded from coverage. *See Union Insurance Co. v. Houtz,* 883 P.2d 1057 (Colo.1994).

When a court is construing the language of an insurance contract, its provisions cannot be read in isolation, but must be considered as a whole. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo. 1992).

An unambiguous insurance contract must be given effect according to the ordinary and plain meaning of its terms. A court may not rewrite an unambiguous policy or limit its effect by a strained construction. However, ambiguous language must be construed in favor of the insured and against the insurer who drafted the policy. *Allstate Indemnity Co. v. Gonzales,* 902 P.2d 953 (Colo. App.1995).

Here, there are two contractual duties that are at issue: the duty of an insurer to defend its insured against claims of liability, and the duty of the insurer to indemnify its insured for the insured's liability obligations.

The duty to defend is broader than the duty to indemnify and should be viewed separately. An insurer seeking to avoid its duty to defend bears a heavy burden.

In determining whether there is a duty to defend, a court must look to the allegations in the complaint that assert liability on the part of the insured to determine whether there may be a covered liability and a concomitant obligation by the insurer to defend. If those allegations potentially or arguably come within the policy coverage or there is some doubt whether a theory of

recovery within the policy coverage has been stated, then the insurer must accept the defense of the claim. Also, an insurer must defend against all claims if some potentially covered claims are alleged. *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991).

■ In order to avoid any policy coverage, including absolution from the duty to defend, an insurer must establish that a policy exclusion applies in the particular case and that it is not subject to any other reasonable interpretations. In other words, an insurer has a duty to defend unless it can establish that: (1) the allegations in the complaint against its insured are such that they solely and exclusively describe a situation within the exclusions in the insurance policy; and (2) there is no factual or legal basis upon which the insurer eventually might be held liable to indemnify the insured.

■ Whether indemnification is ultimately available under the contract is a question of fact. In contrast, the determination of a duty to defend depends on the terms in the insurance policy and the interpretation of those terms based upon the principles of contract interpretation. The insured's actual liability is not the criterion which places upon the insurance company the obligation to defend. *Hecla Mining Co. v. New Hampshire Co., supra.*

### III. Pollution Exclusion

The cities contend that the trial court erred in granting summary judgment in favor of all defendants on the duty to defend based upon the pollution exclusion. We agree.

Initially, we note that substantially similar contract language contained in the CGL standard contract is at issue in nearly all insurance litigation pertaining to the years between 1971 and 1986. *Broderick Investment Co. v. Hartford Accident & Indemnity Co., supra.* This contract language, and particularly interpretation of the pollution exclusion clause, has generated an inordinate amount of litigation throughout the country with varying results. It also has produced considerable commentary in law journals and other

legal publications. *See, e.g., Larsen Oil Co. v. Federated Service Insurance Co.*, 859 F.Supp. 434 (D.Or.1994); S. Greenlaw, *The CGL Policy and the Pollution Exclusion Clause: Using the Drafting History to Raise the Interpretation Out of the Quagmire*, 23 Colum.J.L. & Soc.Probs. 233 (1990).

Here, the relevant language in each policy provides coverage for legal liability for damages imposed upon the insured based on bodily injury or property damage caused by an "occurrence." Each policy defines an "occurrence" as:

> [A]n accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Even if an insured's loss resulted from an occurrence, the insurer still may avoid paying on the policy if the event falls within the pollution exclusion clause contained in each policy. The pollution exclusion clause excludes coverage for damages:

> arising out of *discharge,* dispersal, release or escape of ... toxic chemicals, liquids or gases, *waste materials or other irritants, contaminants or pollutants into or upon land* .... (emphasis added)

However, coverage is restored if such "discharge, dispersal, release or escape is sudden and accidental." *See Hecla Mining Co. v. New Hampshire Insurance Co., supra* ("sudden and accidental" defined as "unexpected and unintended").

#### A.

■ Insurers contend that they have no duty under *Hecla* to defend because: (1) their duty to defend is measured against the language as stated within the four corners of the complaint; (2) the complaint here is the PRP letter from the EPA alleging that the cities disposed of "pollutants" at the Lowry Landfill; (3) the allegations of the complaint must be taken as true; and (4) those allegation put this case squarely within the pollution exclusion. We are not persuaded.

Under the interpretation urged by insurers, the recipient of a PRP letter from the EPA would *never* be covered because the

EPA invariably will allege that the recipient of the letter has discharged pollutants. But, the contracts, by their terms exclude the discharge of sewage sludge from coverage only if it is an industrial type emission or a waste material or other irritant, contaminant, or pollutant. The insurers' interpretation is also inconsistent with *Hecla*'s broad construction of the duty to defend in favor of the insured.

In *Hecla*, as here, insurers denied they had a duty to defend claims against their insured arising from alleged CERCLA violations. There, as here, insurers relied on the pollution exclusions in their CGL policies, and urged narrow interpretations of the terms "occurrence" and "sudden and accidental."

The *Hecla* court rejected the insurers' position, concluding that: (1) because there were no claims asserting Hecla Mining expected or intended the discharge of pollutants into the California Gulch as a result of its mining operations, there was an "occurrence" within the meaning of the insurance policy that was "unexpected and unintended"; and (2) the phrase, "neither expected nor intended" excludes only "those damages that the insured knew would flow directly and immediately from its intentional act." Accordingly, the court held that the insurers had a duty to defend. *Hecla Mining Co. v. New Hampshire Insurance Co., supra,* 811 P.2d at 1086–88.

Thus, it is true that, when determining the duty to defend, the court must examine the allegations within the complaint. However, the *Hecla* court also held that, if there is any factual or legal basis on which an insurer eventually might be held liable to indemnify plaintiffs, then the insurer must defend, subject to a reservation of rights. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

Here, we need not look beyond the four corners of the complaint to conclude there is a factual and legal basis upon which the insurers might be held liable to indemnify the cities. This is because there is a pending legal issue regarding the characterization of domestic sewage sludge.

Several courts have recognized a significant distinction between: (1) toxic industrial sludge; and (2) non-toxic, non-hazardous "biosolids" or domestic sewage sludge, which is suitable for beneficial reuse on agricultural lands or as a soil supplement. *See Incorporated Village of Cedarhurst v. Hanover Insurance Co.,* 160 Misc.2d 795, 611 N.Y.S.2d 417 (1994) (natural municipal sewage such as garbage and undigested food residue not pollutant); *United States Fidelity & Guaranty Co. v. Armstrong,* 479 So.2d 1164 (Ala.1985) (pollution exclusion refers to industrial pollution, not natural city sewage); *Minerva Enterprises v. Bituminous Casualty Corp.,* 312 Ark. 128, 851 S.W.2d 403 (1993) (definition of "pollutants" intended to exclude industrial wastes, not common household wastes).

We also note that, on similar facts involving the Lowry Landfill site, two federal district courts in Colorado have rejected the defendants' argument that, as a matter of law, sewage sludge is an irritant, contaminant, or pollutant. *See Metro Wastewater Reclamation District v. Continental Cas. Co.,* 834 F.Supp. 1254, 1260 (D.Colo.1993) (court rejected insurers' claim that pollution exclusion clauses precluded coverage because there was genuine issue whether sewage sludge fell within the plain meaning of "waste materials or other irritants, contaminants or pollutants") and *City of Lakewood v. United States Fire Insurance Co.,* No. 90–Z–880 (D.Colo., March 30, 1993) (bench ruling by Weinshienk, J., finding duty to defend under *Hecla* on basis of PRP letter) (reprinted in Mealey's Litigation Reports–Insurance Vol. 7, # 30).

Based upon this authority, we thus conclude there is an unresolved and potentially dispositive mixed question of law and fact whether domestic sewage sludge is an "irritant, contaminant, or pollutant" within the meaning of the pollution exclusion clause. Accordingly, we further conclude the trial court erred in finding as a matter of law that the pollution exclusion necessarily applied, and in determining that the insurers had no duty to defend the plaintiffs in this action.

## B.

In granting summary judgment for all insurers, the trial court heavily relied on *Bro-*

*derick Investment Co. v. Hartford Accident & Indemnity Co., supra,* which held that the initial placement of admitted pollutants into containment ponds constituted a "discharge, dispersal, release or escape," even though the insured did not expect or intend damage to result, and that property damage arose out of that "discharge, dispersal, release or escape."

Based upon *Broderick,* the trial court found that: (1) a discharge of the cities' waste occurred when the waste initially was placed at the landfill, rather than when the alleged pollutants later escaped into the surrounding environment; (2) because the cities had intended initially to place the waste in the landfill, they expected and intended the result within the meaning of *Hecla;* and (3) coverage was precluded by the pollution exclusion clause.

On appeal, insurers urge us similarly to conclude there is no coverage under the policies because the cities "expected and intended" to "discharge" pollutants into the Lowry Landfill.

As previously noted, however, the pollution exclusion clause only bars coverage under the policy if the discharge is of "irritants, contaminants or pollutants." If the discharge of sludge here was not such an emission, as the cities contend, it is irrelevant when the discharge occurred and what the cities expected or intended.

Thus, given our earlier conclusion that there is a genuine issue regarding the proper characterization of the cities' sewage sludge, we need not decide whether the trial court's reliance on *Broderick* was appropriate and the discharge by the cities occurred at the time of the initial placement of sewage at the Lowry Landfill, or whether it occurred at a later time, as other courts have concluded. *Cf. Patz v. St. Paul Fire & Marine Insurance Co.,* 15 F.3d 699 (7th Cir.1994) (placement of liquid waste into containment area was not a discharge into the environment; rather, "discharge" occurred when water leached through the bottom of the pit); and *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992) (relevant discharge is the release from the state of confinement and not initial placement into a landfill). If the cities' argument is successful, the need for such a determination may never arise.

In summary, an insurer has the duty to defend its insured unless it establishes that there is no factual or legal basis on which liability might be established. Here, there is a legal and factual basis on which it may be concluded that the pollution exclusion does not apply to the cities. Accordingly, the insurers have failed to meet their heavy burden of showing "that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy," and summary judgment based upon the pollution exclusion clause should not have been granted. *Hecla Mining Co. v. New Hampshire Insurance Co., supra,* 811 P.2d at 1090.

### IV.  Duty to Indemnify

■ In a related contention concerning the pollution exclusion clause, the cities next assert that the trial court erred in granting summary judgment in favor of all insurers concerning the duty to indemnify. Again, we agree.

The cities' underlying CERCLA liability has not been resolved and no judgment has entered. Thus, the trial court's resolution of the duty to indemnify was premature. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra. See also New Hampshire Insurance Co. v. Constitution Associates,* 908 P.2d 1163 (Colo.App.1995) (*cert. granted,* January 16, 1996); *Employers' Fire Insurance Co. v. Western Guaranty Fund Services,* 924 P.2d 1107 (Colo.App.1996).

### V.  Joint Venture Exclusion

■ The cities next contend that the trial court erred in granting defendants' Compass, Commercial Union, and American Excess separate motion for summary judgment after finding the Bi–City Plant was a joint venture and therefore excluded from coverage. In a related argument, defendants Guaranty and American States contend that the trial court erred in not granting their motions for summary judgment based on the joint venture exclusion. We conclude that summary judgment concerning the duty to defend was

proper as to all of these defendants based upon the joint venture exclusion.

The policies issued by these five defendants contained joint venture exclusions which provide that:

> This insurance does not apply to bodily injury or property damage *arising out of the conduct of any ... joint venture of which the insured is a partner or member* and which is not designated in this policy as a named insured. (emphasis added)

A joint venture exists when there is: (1) a joint interest in property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture. *See Hancock Construction Co. v. Cummins*, 791 P.2d 1208 (Colo. App.1990). Two parties merely cooperating in operating and managing an enterprise do not constitute a joint venture. *See Agland, Inc. v. Koch Truck Line, Inc.*, 757 P.2d 1138 (Colo.App.1988).

Plaintiffs concede that the joint operation of the Bi–City Plant involved a joint interest in property and that their actions and conduct reflected joint cooperation in the operation of the plant. The only remaining issue relating to the joint venture is whether the agreements for the creation and operation of the Bi–City Plant contemplated a sharing of profits or losses.

The agreement between the cities provides, in relevant part:

> WHEREAS, it is the intention of the Cities of Littleton and Englewood to manage and operate the Englewood WWTP [Waste Water Treatment Plant] in concert with, and within the administrative structure established for the Joint Use WWTP; and, WHEREAS, the basic concept of this Agreement is that neither city shall be a customer of the other, but rather the Cities shall operate the Bi–City plant with costs of additions, and costs of operation and maintenance being divided between them in a fair and equitable manner as set forth hereinafter with specificity....

Although the agreement does not specifically state the cities will share profits or losses, it does say they will divide the costs of operation and maintenance. Thus, we must determine whether the trial court erred in finding that "profits" may properly be interpreted to include a reduction in costs. Under these circumstances, we conclude that such an interpretation is appropriate.

When determining the plain and ordinary meaning of words, definitions in a recognized dictionary may be considered. *Hecla Mining Co. v. New Hampshire Insurance Co.*, supra.

*Webster's Third New International Dictionary* 1811 (1986) defines profit, *inter alia*, as:

> An advantage, benefit, accession of good, gain, or valuable return especially in financial matters....

> A benefit or advantage accruing from the management, use, or sale of property from the carrying on of any process of production, or from the conduct of business....

Thus, the term "profits" may take many forms and is not limited to the "gross proceeds of a business transaction less the costs of the transaction," as urged by the cities. Applying the quoted dictionary definition here, we conclude that the cities realized a savings and acquired a benefit, gain, and advantage by agreeing to divide the costs. Since these savings constituted a "profit," we further conclude that the cities were engaged in a joint venture.

Accordingly, the trial court did not err in granting summary judgment on the duty to defend in favor of defendants Compass, Commercial Union, and American Excess based upon the joint venture exclusions in the policies issued to the cities.

Contrary to the contention of defendants Compass, Commercial Union, and American Excess, the court did not grant summary judgment on the duty to indemnify on this basis. Although these defendants moved for summary judgment on all issues based on the joint venture exclusion, the court's order of September 1, 1992 was limited in scope. It states that "the Cross-Motions for Summary Judgment on the *duty to defend* of Defendants ... are granted." (emphasis added)

In any event, resolution of the duty to indemnify would have been premature. *See*

*Hecla Mining Co. v. New Hampshire Insurance Co., supra* (resolution of the duty to indemnify premature where underlying liability has not been resolved and no judgment has entered); *New Hampshire Insurance Co. v. Constitution Associates, supra.*

As noted earlier, defendants, Guaranty National and American States, also moved for summary judgment based upon the joint venture exclusion. The trial court did not rule on their motions, but instead granted summary judgment in their favor based on the pollution exclusion clause. However, because a correct judgment will not be disturbed on review, these defendants now are entitled to affirmance of their summary judgment on the duty to defend based on the joint venture exclusion. *See Cole v. Hotz*, 758 P.2d 679 (Colo. App. 1987) (a correct judgment will hot be disturbed on review even though the trial court's reasons may have been wrong). Again, resolution of the duty to indemnify would be premature.

## VI. Additional Contentions

Because they were not addressed by the trial court, we do not address the cities' additional contentions that: (1) the Bi–City Plant is a completed operations hazard and that the pollution exclusion does not apply to completed operation hazards; (2) they were entitled to coverage based on the personal injury protection provisions of the insurance policies; (3) the EPA action is a "suit" which obligates the insurance companies to defend them; and (4) the costs of mitigation and remediation of actual or threatened property damage sought by the EPA are damages covered under the insurance policies. *See Committee for Better Health Care v. Meyer*, 830 P.2d 884 (Colo.1992).

Nor do we address the cities' assertion that the trial court erred in denying their motion for partial summary judgment. This issue has been disposed of by our conclusion that the court erred in granting defendants' motions for summary judgment based on the pollution exclusion clause.

Also, because the trial court did not address them, we do not address the defendants' contentions that the EPA action is not a "suit," and that the definition of "pollutant" contained in the Colorado Water Quality Control Act, governs in this case. Section 25–8–103(15), C.R.S. (1989 Repl. Vol. 11A).

## VII. Cross-appeal

In view of our conclusion that Guaranty National has no duty to defend based on its joint venture exclusion and the necessity of a remand for further proceedings, we conclude that the issues raised by Guaranty National on cross-appeal regarding its contingent liability under its umbrella insurance policy are moot.

The summary judgment based upon the joint venture exclusion in favor of the defendants Compass, Commercial Union, American Excess, Guaranty National, and American States concerning the duty to defend is affirmed. However, insofar as summary judgment in favor of any defendant was based upon the pollution exclusion or concerned the duty to indemnify, it is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion. Guaranty National's cross-appeal is dismissed as moot.

HUME and TAUBMAN, JJ., concur.