EDGAR'S WAREHOUSE, INC., *v.* UNITED STATES
FIDELITY & GUARANTY COMPANY.

1. INSURANCE—CONSTRUCTION OF POLICY.

   Words in an insurance policy will not be given a forced or strained
   meaning.

2. SAME—CONSTRUCTION OF POLICY.

   Courts will not make a new contract of insurance for the parties
   under the guise of construing the contract.

3. SAME—CONSTRUCTION OF LIMITED BURGLARY POLICY.

   Recovery by insured under defendant's "comprehensive dishonest,
   disappearance and destruction policy" *held*, limited to $10,000
   for each instance of a felonious abstraction of property from
   the inside of the building occupied solely by the insured after
   felonious entry therein by actual force and violence evidenced
   by visible marks upon or physical damages to the interior of
   the premises at the place of entry.

4. APPEAL AND ERROR—REMAND—BURGLARY INSURANCE—ADDITIONAL
   FINDING.

   Judgment for plaintiff in action by insured warehouseman, lessee
   of part of 1 of the buildings in a 3-building complex, under
   defendant insurer's "comprehensive dishonest, disappearance,
   and destruction policy," a limited burglary policy, is reversed
   with instructions to make a specific finding as to which of
   several losses was attributable to the single forcible entry to
   the portion of the building leased to insured, the sole instance
   for which the insurer could be held liable under the limited
   policy.

REFERENCES FOR POINTS IN HEADNOTES

[1]  29 Am Jur, Insurance § 251.
[2]  29 Am Jur, Insurance § 245 *et seq.*
[3]  29 Am Jur, Insurance § 261.
[4]  5 Am Jur 2d, Appeal and Error § 962.

Appeal from Wayne; Piggins (Edward S.), J. Submitted October 7, 1964.   (Calendar No. 11, Docket No. 50,150.)   Decided May 11, 1965.

Declaration by Edgar's Warehouse, Incorporated, a Michigan corporation, against United States Fidelity & Guaranty Company, a foreign corporation, for losses allegedly covered by an insurance policy issued by defendant.   Judgment for plaintiff.   Defendant appeals.   Reversed and remanded with instructions.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr* (*Edward P. Echlin,* of counsel), for plaintiff.

*Mansfield, DeWitt, Sulzbach & Jenkins* (*David S. DeWitt,* of counsel), for defendant.

SMITH, J.   After denial of plaintiff's claim of burglary loss by defendant insurance company, plaintiff brought suit on the insurance policy.   A nonjury trial resulted in judgment for plaintiff from which defendant takes this appeal.

Plaintiff is in the warehousing business and at the time of loss operated a number of warehouses for the storage of merchandise.   Involved in this lawsuit is a "complex" of buildings formerly occupied by a manufacturing concern.   In the "complex" are 3 buildings, denominated A, B, and C, leased by another warehousing company which company had leased a portion of building C to plaintiff.   A bridge connects 2 floors of A building with 2 floors of C building.   At the opposite end of A building, it is separated from B building by a fire wall in which there is a sliding door.   Plaintiff had in storage in building C during February, March, and April 1960, a large number of tires, the property of a tire and rubber company.   Between February and April,

1960, plaintiff claimed that as a result of a series of break-ins and larcenies it was damaged in the amount of $32,918.57, having had to pay the tire and rubber company for the loss of its tires from the warehouse.

It is unnecessary for the purpose of this review to discuss each of defendant's claims. Essentially, what is involved is an interpretation of policy provisions as to what risks were covered by the insurance and whether or not proofs offered by plaintiff brought the losses, or any of them, within the terms of the policy.

Defendant says that "Coverage is not afforded for all loss due to criminal activity, or even to burglary as defined by the common law, but only for burglaries which are accomplished by actual force and violence of such extent that physical damage to the exterior of the premises results at the place of entry from the agency by which the force and violence was applied." If we understand plaintiff's reply, it is that proofs offered by plaintiff showing entry with and without force at various points in the A, B, C building "complex" were sufficient to sustain the trial court's findings. It will be necessary, therefore, to discuss policy provisions and to differentiate some of the proofs offered.

The insurance involved is defendant's "Comprehensive Dishonest, Disappearance and Destruction Policy—Form B." The loss insured against, insofar as it pertains to this case, is expressed in the policy as follows:

"7. *Loss by burglary* or robbery of a watchman, *while the premises are not open for business, of merchandise, furniture, fixtures and equipment within the premises* or within a showcase or show window used by the insured and located outside the premises but inside the building line of the building contain-

ing the premises or attached to said building." (Emphasis supplied.)

The policy defines several of its terms, "burglary" and "premises", as follows:

" 'Burglary' means the felonious abstraction of insured property (1) *from within the premises* by a person *making* felonious *entry therein by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry,* or (2) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence, of which force and violence there are visible marks thereon.   *   *   *

" *'Premises' means the interior* of that portion of any building   *   *   *   which is occupied solely by the insured in conducting its business, but shall not include (1) showcases or show windows not opening directly into the interior of the premises, or (2) public entrances, halls or stairways." (Emphasis supplied.)

The policy provided a limit of $10,000 "with respect to all loss   *   *   *   arising out of any one occurrence." Defendant points out that plaintiff pleaded and attempted to prove 7 different "occurrences" in order to take advantage of the $10,000 coverage for each "occurrence" it could establish. Defendant contends that plaintiff failed in its burden of proving 7 separate losses, but also that because only one forcible entry was shown to have been made directly into building C, then only one "occurrence", within the meaning of the policy, was shown, and as to that one, no connection was shown between that entry and the inventory reduction discovered sometime thereafter.

Plaintiff offered proofs tending to show various means (methods of operation) by which thieves entered building C of the "complex." Direct testimony was presented not only from a guard, employed by plaintiff's lessor to cover the entire A, B, C building "complex", but also from 3 of the thieves who, previously, had been apprehended and prosecuted. Some of the testimony indicated that forcible entries had been made in buildings A and B. Other testimony indicated that entries had been made in buildings A and B by merely opening unlocked windows. After such entries, access to building C (where the tires were stored) was gained by crossing the enclosed bridge between A and C and entering C by an unlocked door. It is uncontested that only one forcible entry was made directly into building C.

In *Sturgis National Bank* v. *Maryland Casualty Co.*, 252 Mich 426, wherein the language of a burglary policy was construed, this Court held, as it has done in prior and subsequent cases, that no forced or strained meaning will be given words in an insurance policy and that courts will not make a new contract for the parties under the guise of construing the contract.

The risk insured against in this case was the loss by burglary (as defined in the policy) from the premises (as defined in the policy) with respect to all loss arising out of any one occurrence. Burglary as defined by policy is the felonious abstraction of property from within the premises by a person making felonious entry therein by actual force and violence as evidenced by visible marks made by tools, explosives, electricity, or chemicals upon, or physical damage to, the exterior of the premises at the place of entry. Premises is a term defined in the policy as the interior of that portion of any building occupied solely by the insured in conducting its busi-

ness.   It seems clear from the policy language that
unless plaintiff suffered a felonious abstraction of
property from the inside of the building occupied
solely by plaintiff after felonious entry therein by
actual force and violence evidenced by visible marks
upon or physical damage to the exterior of the
premises at the place of entry then the loss is not
covered.

Applying this construction to the facts in this
case, it appears that the trial court was in error.
It is not disputed that there was a series of felon-
ious abstractions of property from inside building
C, occupied by plaintiff-insured.   It was not shown,
however, except in the one instance, that such prop-
erty was abstracted after felonious entry to build-
ing C by actual force and violence evidenced by
visible marks upon or physical damage to the ex-
terior of building C at the place of entry.   Except
for the one entry, other entries proved were to build-
ings A and B in the "complex", buildings not occu-
pied by plaintiff-insured.   The fact that building C
was accessible to A and B by a connecting bridge
does not mean that, within contemplation of the
policy, plaintiff-insured occupied A and B.   There-
fore, A and B were not premises covered within the
meaning of the policy.

Further, it appears that the thieves' general meth-
od of operation was to gain entrance either to
building A or B, by whatever means necessary,
then to enter building C by way of a bridge or
ramp connecting A to C.   There was no evidence of
force or physical damage when building C was so
entered.   In fact, there is testimony from at least
one of the thieves that his way into C was made easy
because the door to C from A was not locked.   We
agree with defendant that the policy requirement
of forcible entry was designed to avoid, where pos-
sible, this kind of easy pickings for thieves.   The

policy feature was designed to provide coverage only where the insured had exercised due diligence in securing the property from theft. It was not intended to cover the situation where a "gate" is left open.

Defendant insists that in the single instance where plaintiff proved a forcible entry to building C there was a failure to connect up the entry to a specific occurrence of loss. The building was under constant scrutiny after April 4, 1960, after the first discovery of damage by forcible entry on April 1st. Several inventories indicating losses were made between March 15th and April 2d. There was no specific finding as to which of these losses was attributable to the forcible entry to building C, which apparently happened sometime between March 15th and April 1st. On remand, the trial court will make this determination and enter judgment accordingly.

Reversed and remanded; costs to defendant.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, O'HARA, and ADAMS, JJ., concurred.

SOURIS, J., did not sit.