**ROYAL INSURANCE COMPANY,**
Plaintiff,

v.

**Thomas BITHELL and Irene Bithell, Defendants.**

No. 92–CV–74191–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 15, 1993.

Leonard B. Schwartz, Southfield, MI, for plaintiff.

Robert R. Cleary, Lucy R. Benham, Mark E. Hallada, Troy, MI, for defendants.

## OPINION

DUGGAN, District Judge.

This matter is before the Court on both plaintiff's and defendants' motions for summary judgment pursuant to F.R.Civ.P. 56. Both parties agree that the dispositive issue is whether the insurance policy issued by plaintiff, Royal Insurance Company, provides coverage for the loss incurred by defendants, Thomas and Irene Bithell ("Bithells"), when raw sewage from a sewer line beneath their home entered the house. The Court has reviewed the briefs submitted in support of and in opposition to the motions and has had the benefit of oral argument held on August 19, 1993. For the reasons set forth below, plaintiff's motion for summary judgment shall be granted.

## BACKGROUND

The following facts are derived from the pleadings and supporting documents submitted by the parties as well as information provided at oral argument. It is undisputed that defendants purchased a homeowners insurance policy ("Policy") from plaintiff, and that the Policy was in effect when defendants suffered their loss. Both parties concede that the Policy extends coverage for all risks of loss that are not specifically excluded pursuant to the terms of the contract. The interpretation of the Policy is in dispute. Prior to the filing of the instant action, defendants instituted a suit in state court.[1] The issues involved in that case required the state court to address the issue of whether the defendants' alleged involvement with the sewer and construction of the Bithell's home are redressable in tort.

Defendants assert that their loss occurred due to the incursion of a foreign substance into their home, caused by a deteriorated sewer line located beneath their home. The "foreign substance" referred to by defendants is raw sewage. Plaintiff contends that the actual cause of loss is "contamination," due to the raw sewage in the home, at such levels that the house has become uninhabitable, and may never be habitable. As such, plaintiff asserts that it is an excludable loss under the Policy.

Defendants first became aware of the sewer problem on March 3, 1991, when they found a large amount of "water" in the basement bedroom. The defendants subsequently learned that raw sewage from the Oakland Hills sewer line had discharged into defendants' property and caused the leak in the basement. Defendants re-experienced the flooding problem again in May and July of 1991 during periods of heavy rainfall.

Defendants submitted a claim for the damage to their home and personal property caused by the incursion of contamination in their home. They contend that because the "illegal" sewer line deteriorated over time, and because it was not constructed to withstand the increased burden that has been placed on it, raw sewage entered their home. Defendants assert that in order to remediate the damage, the soil underneath their home, and within 12 feet of their home, must be excavated and replaced with clean fill. Additionally, defendants claim that their home must be essentially gutted and rebuilt to remove the contamination.[2] There can be no serious dispute that the claimed loss is the result of contamination caused by the presence of raw sewage in defendants' home. Plaintiff denied defendants' claim, stating that the soil surrounding the home was not covered property pursuant to the language of the Policy, and further, that the cause of damage to the home and personal property was not covered under the Policy.

Plaintiff filed an action in this Court on July 22, 1992, requesting a declaratory judgment that neither the loss incurred nor the

---

1. The Bithells, defendants in this suit, filed an action against the Oakland Hills Country Club, Bloomfield Township, and the Bloomfield Township Supervisor on May 30, 1991, in Oakland County Circuit Court (Case no. 91–412174).

2. The clean-up estimate they submitted indicates that among other things, all wall coverings and floor coverings must be replaced, new ceiling tiles installed, new furniture bought, as well as replacement of the water heater, furnace, and all drain pipes.

cause of the loss was covered under the Policy. Plaintiff points to numerous exclusionary clauses within the Policy to support its contention.[3] Currently before this Court are the parties' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56, pertaining to the issue of whether or not the Policy covers defendants' loss.

## DISCUSSION

To warrant summary judgment under Fed. R.Civ.P. 56, the moving party must show that "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; *significant probative evidence must be presented to support the complaint.*" *Goins v. Clorox Co.,* 926 F.2d 559, 561 (6th Cir.1991) (emphasis added). However, in determining whether there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In order to resolve the present dispute, this Court must apply well-established rules of insurance contract construction. An insurance contract must be viewed as a whole in order to give meaning to its terms. *Allstate Ins. Co. v. Miller,* 175 Mich.App. 515, 519, 438 N.W.2d 638 (1989) (per curiam). Moreover, a court must look at the plain and ordinary meaning of the contract language; a court may not supply a forced or strained meaning to the words. *Edgar's Warehouse Ins. v. U.S. Fidelity & Guaranty Co.,* 375 Mich. 598, 602, 134 N.W.2d 746 (1965); *Allstate,* 175 Mich.App. at 519, 438 N.W.2d 638. It follows that a court cannot and will not make a new contract for the parties under the guise of contract interpretation. *Edgar's Warehouse,* 375 Mich. at 602, 134 N.W.2d 746. Therefore, where the contract language is clear and unambiguous, its terms will be enforced as written, unless the terms are in contravention of public policy. *Rakas v. Farm Bureau Mut. Ins. Co.,* 412 Mich. 355, 361–62, 314 N.W.2d 440 (1982), rehr'g denied, 412 Mich. 1119 (1982). In this Court's opinion, the contract language in question is unambiguous as to whether or not coverage is excluded.

Defendants engage in a futile exercise of semantics to avoid the clear exclusionary language of the Policy. They argue that the damage was a result of "the incursion of a foreign substance into their home," and urge that this is not the same as a claim for damage caused by contamination or pollutants. This argument is meritless. The "foreign substance" that entered their home was raw sewage; in this Court's view, raw

---

3. Plaintiffs contend that the following exclusionary clauses apply to bar coverage in the instant action:

I. **Under Coverage A—Dwelling,** the soil excavation is not covered property because the Policy explicitly states "this coverage does not apply to land, including land on which the dwelling is located." (Policy at p. 5).

II. **Under Section I—Perils insured against,** excluded loss caused by

1. Loss caused by wear and tear, marring deterioration;
2. Loss caused by inherent vice, latent defect;
3. Loss caused by mold, wet or dry rot;
4. Loss caused by release, discharge, or dispersal of contaminants or pollutants;

(Policy at p. 10–11, # 4 (a–c, & e).

III. **Under Section I—Exclusions:**

1. Water damage, meaning water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, foundation, or other structure;

2. Weather condition that contribute to the water damage;

3. Acts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body;

4. Faulty, inadequate or defective planning, zoning, development, surveying, siting, design or specifications of part or all of any property whether on or off the residence premises.

(Policy at p. 11, # 2 (a–c)).

sewage is clearly a contaminant, and the raw sewage was unquestionably the cause of damage to defendant's home and personal property.

Essentially, defendants' claim of loss can be broken into three separate categories: 1) damage to the land itself; 2) damage to the dwelling structure; and 3) damage to the personal property within the dwelling. Under defendants' Policy, any property loss is insured unless excluded or excepted by the terms of the Policy. The introductory paragraph of "Part 3: Section I—Property Coverages" of defendants' Policy clearly indicates that "[f]or a property loss to be covered under Section 1, *both the property involved, and the cause of damage must be covered.*" (Policy at p. 5). Plaintiff argues that because both of these elements are not present for any of defendants' claimed losses, coverage does not exist. Defendants, on the other hand, argue that the Policy does provide coverage, and assert that because the exclusionary language is ambiguous, the ambiguity should be construed in favor of coverage. While this Court agrees that any ambiguities must be construed in favor of defendants, it is apparent that the provisions cited by plaintiff are unambiguous and clearly exclude coverage.

### A. Damage to the Contaminated Soil

■ It is undisputed that the Policy in question provides property coverage under Section 1. This provision provides insurance protection for the insured premises for damage arising out of specific causes which are not otherwise excluded in the insurance contract. The provision entitled "Coverage A—Dwelling" of defendants' Policy explicitly excludes coverage for defendants' claim of loss as it relates to the excavation of the contaminated soil surrounding and underneath defendants' home. The Policy clearly states that "this coverage does not apply to land, including land on which the dwelling is locat-

ed." (Policy at p. 5). Accordingly, the damage to the soil alleged by defendants is not covered by the Policy, based on a plain reading of its terms.[4]

### B. Damage to the Dwelling and Personal Property

#### 1. Applicable Policy Provisions

Any damage to the dwelling itself is covered under the Policy:

**COVERAGE A—DWELLING**

We cover: 1. The dwelling on the **residence premises** shown in the Declarations, including structures attached to the dwelling . . .

(Policy at p. 5) (emphasis in the original).

Damage to personal property is also covered under the Policy. The applicable provision states in pertinent part:

**COVERAGE C—PERSONAL PROPERTY**

We cover personal property owned or used by **an insured** . . . .

(Policy at p. 5) (emphasis in the original). In order for these losses to be covered, however, the cause of the damage must also be covered. In the present case, the cause of damage is explicitly excluded by the terms of the Policy.

#### 2. Applicable Exclusionary Provision

■ The Policy instructs that "[o]nce you have determined that the property involved in a loss is covered under this policy, you should determine whether the cause of damage is covered." (Policy at p. 10) On pages 10–12 of the Policy, the causes of damage that are covered are discussed, by delineating what types of causes are excluded. The preliminary paragraph explains that for "Coverages A, B, and C," the Policy does not insure losses that are either excluded under Section I—Exclusions (p. 11–12), or losses

---

4. Defendants assert that the excavation of the soil is covered under the section "Additional Property Coverages," because it constitutes removal of debris. The terms of this provision, however, indicate that defendants are incorrect. It states in pertinent part that:

    **1. Debris Removal.** We will pay your reasonable expenses for the removal of:

        a. Debris *of covered property* if a Peril Insured Against that applies to the damaged property causes the loss . . .

(emphasis added). Because the land itself is not covered property, the raw sewage contaminant within the soil, the "debris," as defendant terms it, is not covered under this provision.

that are caused by the items listed on pages 10 and 11. The Policy specifically excludes loss caused by contaminants or pollutants.[5] The provision states in pertinent part:

> We insure against risks of direct loss to property described in Coverages A, B, and C only if that loss is a physical loss to the property; **however, we do not insure loss:**
>
> 1. Under Coverages A, B, and C: ...
>
>    b. caused by: ...
>
>       4(e) **release, discharge, or dispersal of contaminants or pollutants** ...

(Policy at 10–11) (Emphasis added). This Court finds that the above-quoted language constitutes a clear and unambiguous exclusion that applies in the instant action.[6] The damage to defendants' home was caused when raw sewage from the Oakland Hills Country Club sewer spilled into their home. Defendants argue that it was the incursion of the foreign substance, and not the foreign substance itself, that caused the loss, and therefore, the exclusionary language cited by plaintiff is inapplicable. In this Court's view, there is no question that the raw sewage that leaked into defendants' home is a "release, discharge, or dispersal of contaminants or pollutants." The clear language of the Policy excludes coverage for the losses claimed by defendants.[7] For this reason, plaintiff's motion for summary judgment must be granted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment shall be granted and defendants' motion for summary judgment shall be denied.

---

5. Although this Court does not need assistance in determining what "contamination" means, the definition provided by the Fifth Circuit is instructive. The Court asserted that contamination "occurs when a condition of impairment or impurity results from mixture or contact with a foreign substance." *Am. Cas. Co. v. Myrick*, 304 F.2d 179, 183 (5th Cir.1962). Clearly, the raw sewage that mixed with defendant's property fits within this definition.

6. Accordingly, the Court declines to address the other exclusions cited by plaintiff in support of its contention that defendants do not have coverage under the policy for the loses they incurred.

7. Defendant's argument that they are entitled to living expenses incurred when they had to move out of their home also fails. Although defendant is entitled generally to loss of use of their home under "Coverage D," the coverage only applies "if a loss covered under this Section makes that part of the residence premises where you reside not fit to live in." Plaintiff agrees with defendants that the house is uninhabitable due to the contamination. Plaintiff correctly argues, however, that because the loss of their premises was not a result of a cause included in the insurance contract, defendants cannot avail themselves of this provision, either.