89 N.Y.2d 293 (1996)
675 N.E.2d 822
653 N.Y.S.2d 68
Incorporated Village of Cedarhurst, Respondent,
v.
Hanover Insurance Company, Appellant.
Incorporated Village of Cedarhurst, Respondent,
v.
Hanover Insurance Company, Appellant.
Court of Appeals of the State of New York.
Argued October 16, 1996
Decided December 18, 1996.
Roy A. Mura, Buffalo, and Carolyn M. Henry for appellant in the first and second above-entitled actions.
Horenstein, Josepher & Gewanter, P. C., New York City (Stanley M. Gewanter and James A. Jackson of counsel), for respondent in the first and second above-entitled actions.
O'Melveny & Myers LLP, New York City (John L. Altieri, Jr., and Thomas J. Di Resta of counsel), and Wiley, Rein & Fielding (Laura A. Foggan, Daniel E. Troy and Treg A. Julander, of the District of Columbia Bar, admitted pro hac vice, of counsel), for Insurance Environmental Litigation Association, amicus curiae in the first and second above-entitled actions.
Lydia Rocissano Marola, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae in the first and second above-entitled actions.
Judges SIMONS, BELLACOSA and CIPARICK concur with Judge SMITH; Judge LEVINE dissents and votes to reverse in a separate opinion in which Chief Judge KAYE and Judge TITONE concur.
*296 SMITH, J.
The issue in these appeals is whether defendant insurer is *297 required to defend and indemnify its insured, the Incorporated Village of Cedarhurst, in two separate actions brought against the Village for property damage and personal injuries allegedly caused by a discharge or overflow of raw sewage from the municipal sewer system. Defendant contends that it properly disclaimed coverage in both cases pursuant to the pollution exclusions in the insurance policies. We conclude that since the complaints in the lawsuits brought against the Village did not allege any pollution-related injuries, the pollution exclusions do not relieve the insurer of its obligation to defend the Village under the policies. Since evidence of pollution-related injuries may develop at trial and absolve the insurer of its duty to indemnify under the pollution exclusions, the issue of indemnification must abide developments. Accordingly, we modify the order of the Appellate Division in each case.
In 1992, the Village was sued by three of its residents for personal injuries and property damage allegedly caused by a "rush of water and sewage" from the municipal sewage system which caused "massive flooding" of their basement. In a separate action commenced in 1993, Longwood Associates sued the Village for damages allegedly caused by an "overflow" of sewage onto its property. Plaintiffs in both actions alleged that the flooding and "overflow" had occurred because the Village negligently failed to adequately maintain the municipal sewage system.
The Village sought defense and indemnification coverage for these actions under a Commercial Lines Policy and a Commercial Umbrella Policy issued by the defendant. Defendant disclaimed coverage for each case on the ground that the pollution exclusions excused its duty to defend and indemnify the Village under the policies. The Village subsequently commenced these actions seeking a declaration of coverage. Defendant moved to dismiss the complaints and the Village cross-moved for summary judgment in each action.
Supreme Court held that the pollution exclusions were inapplicable and granted summary judgment to the Village in both declaratory judgment actions. As relevant here, Supreme Court held that the exclusions did not apply because raw sewage was not a "pollutant" within the meaning of the policies. A judgment against the defendant was entered in each action.
Defendant appealed the judgments and the Appellate Division affirmed on the ground that the policies did not unambiguously exclude raw sewage from coverage through the pollution *298 exclusions. The Appellate Division concluded that it was ambiguous whether "waste," a category of pollutants specified in the insurance policies, included raw sewage and that the ambiguity rendered the pollution exclusions inapplicable. We granted defendant leave to appeal to this Court.
The insurance policies at issue here exclude coverage for bodily injuries, property damage or personal injuries "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." The policies define "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed" (emphasis added).
Defendant contends that the pollution exclusions clearly and unambiguously exclude coverage for the discharge of raw sewage because the policies include "waste" in the definition of pollutant. The Village argues that no allegations or proof of damages due to the polluting, irritating or contaminating nature of the raw sewage were evident in the underlying actions, and that, consequently, the pollution exclusions are inapplicable. The Village also argues that the pollution exclusion clauses are ambiguous as to whether sewage may properly be classified as waste, a category of pollutants listed in the exclusions.
An insurer's duty to defend must be determined from the allegations of the complaint. "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend" (Technicon Elecs. Corp. v American Home Assur. Co., 74 N.Y.2d 66, 73; accord, Fitzpatrick v American Honda Motor Co., 78 N.Y.2d 61, 63 ["It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered"]; Ruder & Finn v Seaboard Sur. Co., 52 N.Y.2d 663). Moreover, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (Continental Cas. Co. v Rapid-American Corp., 80 N.Y.2d 640, 652). Policy exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (Seaboard Sur. Co. v Gillette Co., 64 N.Y.2d 304, 311). In particular, pollution exclusions do not apply when the *299 complaint does not allege that the discharge complained of actually results in pollution (Technicon Elecs. Corp. v American Home Assur. Co., supra, at 74 ["The first question, then, is whether the pollution exclusion is applicable at all. To be so, the complaint with respect to which coverage is sought must allege a discharge, dispersal, release or escape of a toxic or hazardous waste which has actually resulted in pollution"]).
In order to determine whether defendant was obligated to defend the Village in the underlying actions, we must first examine the allegations of the complaints in those actions to determine whether the plaintiffs in those actions alleged a pollution-related injury.
The complaints in the underlying actions allege that the Village was negligent in maintaining the municipal sewer system. In one action, it is alleged that physical property damage occurred from the flood-like nature of the substances released, characterized as a "rush of water and sewage." Personal injuries were apparently incurred during an attempt to retrieve personal property from the flooded area. In the other action, it is alleged that an overflow from the sewage system caused damage to property. Both allege an injury from a flood-like event; neither alleges an injury from the "polluting," irritating or contaminating nature of the sewage.
Furthermore, contrary to the dissent's contention that this issue is unpreserved, the record reflects that the Village has consistently asserted that defendant had at least the duty to defend under the insurance policies because the underlying complaints allege negligence, and that the water and sewage mixture which was released was not a pollutant. These assertions, by their very nature, include the claim that the substances released did not exert a contaminating or irritating effect since, by definition, a pollutant must be either, or both.
The dissent's assertion that "but for" the presence of sewage the underlying complaints would not support a cause of action (dissenting opn, at 304) assumes the existence of facts (the sewage's irritating or contaminating character) which are not alleged in the complaints. It is only the flooding and "overflow" character of the discharges which occurred that are mentioned in the underlying actions. Thus, the "arising out of" language in the exclusions fails to support the disclaimers of coverage which occurred here.
Manifestly, the damage alleged in the underlying complaints was caused by a discharge of something, but it has not been *300 established that the injuries sustained were contamination caused by a discharge of sewage, or by the irritating or contaminating nature of the sewage. That is a matter for trial. But, in determining whether an insurer has the duty to defend, the applicability of the exclusions depends on the nature of the injury alleged in the underlying complaints, not exclusively on the nature of the substance released. Since any risk of liability faced by the Village allegedly arose from the flood-like nature of the discharge rather than its "polluting" character, the insurer is obligated to defend, but a trial is necessary before any determination on the issue of indemnification can be made.
Accordingly, the order of the Appellate Division in each case should be modified, without costs, in accordance with the opinion and, as so modified, affirmed.
LEVINE, J. (dissenting).
I respectfully dissent. The gravamen of the majority's decision for affirmance avoids consideration of the Appellate Division's conclusion that the pollution exclusion clauses in plaintiff Village's primary and umbrella commercial liability insurance policies are ambiguous with respect to whether raw sewage is a pollutant. Instead, the majority hinges its holding on an interpretation of the complaints in the underlying actions of Yules and Kenney against the Village, and Longwood Associates against the Village, as not specifically alleging that the claimed injuries in those cases were "pollution-related" and caused by "the `polluting,' irritating or contaminating nature of the sewage." (Majority opn, at 299 [emphasis supplied].) Thus, according to the majority, the pollution exclusion clauses do not apply and defendant owes the Village a duty to defend the underlying actions because "any risk of liability faced by the Village allegedly arose from the flood-like nature of the discharge rather than its `polluting' character" (majority opn, at 300). This ground for affirmance was unpreserved and, in any event, is based upon a premise inconsistent with our precedents.
As to the preservation question, the Longwood Associates complaint does not mention flooding, but merely alleges "damages to the Property as a result of an overflow of sewage from the aforementioned sewage system." While it is true that the Yules and Kenney complaint refers to the flooding of the Yules' basement from a break in the Village's sewer system, the "flooding" versus contaminating effect of the escaped sewage was never the basis for the Village's position that the pollution exclusion clauses did not apply, nor was this distinction, on *301 which the majority relies, the basis for the decisions of either of the courts below.
The affidavit of the Village's attorney in support of its cross motion for summary judgment and in opposition to defendant's motion to dismiss sets forth two grounds for asserting that defendant has a duty to defend: (1) that both of the complaints in the underlying actions against the Village contain allegations "relat[ing] to alleged [Village] negligence and a failure to maintain pipes and a sewer system, which is clearly covered under the subject `liability' insurance policy"; and (2) that there is an ambiguity in the pollution exclusion clauses "as to whether or not the subject `pollution exclusion' is intended to refer to `human waste', rather than hazardous and/or dangerous chemicals or other products which are normally the result of industry or man-made products." The same affidavit sets forth two grounds for claiming that defendant also owes a duty to indemnify. The first is that the "`pollution exclusion'" was intended to "deal with those companies, industrial corporations, etc., which are the actual polluters." The second ground merely reiterates that "under any reasonable interpretation [of the pollution exclusion clauses] `human waste' or `sewage' was not and cannot be intended [pollutants] by the use of these words" (emphasis in the original). Again, in the Village's reply to interrogatories, its grounds for avoiding the application of the pollution exclusion clauses make no distinction between the flooding or polluting effect of the sewage released, but states that "`human waste' does not fit in the definition of `Pollutants' pursuant to the insurance policy" (emphasis in the original), and that the "terms and language of such exclusion * * * apply to `man-made' pollutants such as industrial waste and chemicals, etc. which are disposed of and/or dispersed by various business and/or manufacturing entities."
Supreme Court based its decision on both of these arguments advanced by the Village, plus its conclusion that the Village was not an intentional polluter. Thus, the court relied upon the fact that the Village "is not an industrial or commercial enterprise that creates pollution or waste" (160 Misc 2d 795, 800), and that the elements of sewage are not "generally understood to be [pollutants] in ordinary usage (id., at 800), which are limited to a "`chemical-like substance contained in the definition of pollutants or similar to those listed'" (id., at 800, quoting Oates v State of New York, 157 Misc 2d 618, 623). As already noted, the Appellate Division grounded affirmance on only one of the Village's arguments, that "waste" in the *302 pollution exclusion clauses was ambiguous with respect to its application to raw sewage. Thus, the majority's reliance on the absence of contamination-related damages was never the basis of the Village's claim or of the decisions by the lower courts here.
The majority's attempt to circumvent the foregoing demonstration of a clear-cut violation of our preservation jurisprudence is unavailing. The majority acknowledges (majority opn, at 299) that the Village's claims of the duty to defend were based upon the allegations of municipal negligence in the underlying complaints and upon the contention that sewage was not a pollutant as defined in the pollution exclusion clause, but claims that its rationale for affirmance was inherent in those claims, and hence, the preservation requirement was met here. This inference is readily refuted.
It seems self-evident that the preserved issues, namely, whether the Village's negligence was pleaded in the underlying complaints and whether sewage falls within the definition of pollutants in the pollution exclusion clauses, are entirely unrelated to whether the "contaminating nature" of sewage directly caused the damages claimed in the underlying complaints. Put another way, if the majority is correct that the pollution exclusion clauses do not apply in the absence of an explicit allegation of pollution-type damages in the underlying complaints (which concededly are not alleged), insurance coverage for the claims in the underlying complaints would exist here even if the Village's negligence had not been alleged therein, and even if the actual substance that was discharged by the Village was an "acid[], alkali[] [or] chemical[]", expressly named as a pollutant in the exclusion clauses. Hence, in no way are the positions taken by the Village before Supreme Court applicable to the issue made dispositive by the majority in its opinion.
Defendant, thus, has now been adjudged responsible to defend the Village in the Longwood Associates and Yules-Kenney actions without ever being put on notice of the objection relied upon by the majority. This is a fundamental departure from our preservation jurisprudence (see, Lindlots Realty Corp. v County of Suffolk, 278 N.Y. 45, 51-52; Arc Eng'g Corp. v State of New York, 293 N.Y. 819, 820; Cohen and Karger, Powers of the New York Court of Appeals §§ 162-164, at 629-634 [rev ed 1952]; see also, Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 64 N.Y.2d 1049).
*303 Even if the Village had timely raised the differentiation relied upon by the majority between damages caused by the "flooding" of sewage as contrasted with damage caused by the contaminating effect of the sewage, it is, in my view, a distinction without a difference. The pollution exclusion clauses in this case are "absolute," in that they expressly encompass all claims for bodily injury or property damage "arising out of the actual * * * or threatened discharge, dispersal, seepage, migration, release or escape of pollutants" (emphasis supplied), and contain no exception for the sudden or accidental discharge of pollutants, or any similar qualifying language such as a requirement that the discharge must be upon land, the atmosphere or any water course or body of water (see, American States Ins. Co. v Nethery, 79 F.3d 473, 475; Red Panther Chem. Co. v Insurance Co. of State of Pa., 43 F.3d 514, 518, n 3; National Union Fire Ins. Co. v CBI Indus., 907 SW2d 517, 518 [Tex]; cf., Continental Cas. Co. v Rapid-American Corp., 80 N.Y.2d 640).
Indisputably, raw sewage is a highly toxic contaminant, exposure to which is invariably dangerous to human life because of its biological content, which includes fecal coliform and other sewage-borne bacteria (see, East Quincy Servs. Dist. v Continental Ins. Co., 864 F Supp 976; see also, Royal Ins. Co. v Bithell, 868 F Supp 878). Exposure to fecal matter in sewage creates a grave risk of such virulent diseases as cholera, typhoid fever and hepatitis A (see, American Medical Association, Encyclopedia of Medicine, Infectious Disease, at 582-585 [1989]; American Public Health Association, Control of Communicable Diseases Manual, at 94-100, 217-220, 502-507 [16th ed 1995]). Thus the necessary remediation of the entry of raw sewage into a home was described in Royal Ins. Co. v Bithell (868 F Supp, at 879, supra) as the removal and replacement of soil underneath and within 12 feet of the structure and the virtual gutting of the interior.
Therefore, there is no conceptual way to differentiate between the damage "arising out of" the flooding of premises with this morbidly hazardous contaminant, as alleged in the Yules-Kenney complaint and the overflow of sewage in the Longwood Associates complaint, and any other invasion of sewage into a human habitat. The majority's real objection to the application of the pollution exclusion clauses, as already discussed, is that the injuries alleged in the underlying complaints (particularly the personal injuries of Yules and Kenney alleged to have been incurred in attempting to stop *304 the influx and rescue belongings), are not also alleged to be causally connected in any direct way with the contaminating quality of the sewage that flooded their premises. Whether the pleading of such a direct causal relationship in the underlying complaint is necessary under a policy exclusion which precludes coverage for damages "arising out of" a given activity or state of affairs is a question of legal interpretation of the insurance contract upon which this Court has definitively spoken.
In Mount Vernon Fire Ins. Co. v Creative Hous. (88 N.Y.2d 347, 350-351) and U.S. Underwriters Ins. Co. v Val-Blue Corp. (85 N.Y.2d 821, 823), we held that the phrases "based on" and "arising out of" when used in insurance policy exclusion clauses are unambiguous and indistinguishable. We applied in both cases a "but-for" test to determine whether the "arising out of" exclusion controls, that is, if no underlying cause of action could exist but for the existence of the excluded activity or state of affairs, the exclusion applies and there is no coverage (see, Mount Vernon Fire Ins. Co. v Creative Hous., supra, at 350; U.S. Underwriters Ins. Co. v Val-Blue Corp., supra, at 823).
Undoubtedly, the underlying complaints would not support a cause of action "but for" the intrusion of sewage into the plaintiffs' buildings. Therefore, the pollution exclusion clauses control despite the absence of any pleaded direct causal link between the damages claimed in the underlying complaints and the contaminating properties of sewage unless, as the Appellate Division concluded, the clauses are ambiguous as to whether raw sewage is a pollutant.
Facially, in my view, the pollution exclusion clauses unambiguously include raw sewage as a pollutant. The clauses define pollutants as:
"any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."
We construe insurance policy provisions, including exclusions, according to their plain and ordinary meaning (Goldman & Sons v Hanover Ins. Co., 80 N.Y.2d 986, 987; United States Fid. & Guar. Co. v Annunziata, 67 N.Y.2d 229, 232).
By plain meaning and general usage, sewage is a contaminant. The dictionary definition of contaminate is "to render unfit for use by the introduction of unwholesome or undesirable elements [as in] water contaminated by sewage" (Webster *305 Third New International Dictionary [Unabridged] 491 [1986] [emphasis in original]).
Sewage is designated a pollutant in the State's Environmental Conservation Law (see, ECL 17-0105 [17]; 72-0601 [3], [4]). Sewage is named as a pollutant or contaminant under Federal statutes and regulations (see, 33 USC § 1362 [6]; 36 CFR 327.9). It also falls within the definition of hazardous waste under Federal legislation (see, 42 USC § 6903 [5] [B] [defining hazardous waste as "a solid wastes, or combination of solid waste, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may * * * pose a substantial present or potential hazard to human health" (emphasis supplied)]). Most courts have held that sewage is covered under standard insurance policy pollution exclusion clauses, as a pollutant, contaminant, irritant or waste (see, Titan Holding Syndicate v City of Keene, 898 F.2d 265; Royal Ins. Co. v Bithell, 868 F Supp 878, supra; East Quincy Servs. Dist. v Continental Ins. Co., 864 F Supp 976, supra; City of Salina v Maryland Cas. Co., 856 F Supp 1467; Blackhawk-Central City Sanitation Dist. v American Guar. & Liab. Ins. Co., 856 F Supp 584; Headley v St. Paul Fire & Mar. Ins. Co., 712 F Supp 745; contra, Florida Farm Bur. Ins. Co. v Birge, 659 So 2d 310 [Fla App]; Minerva Enters. v Bituminous Cas. Co., 312 Ark 128, 851 SW2d 403).
Once sewage is correctly identified as a pollutant because of its universally acknowledged qualities as a contaminant and as hazardous waste, the release of sewage and its ultimate infiltration of the Longwood Associates' and Yules' properties as alleged in their complaints unambiguously fall within the policy exclusion clauses. Their complaints alleged damages stemming from an "overflow" of sewage from the Village's sewage system (Longwood Associates complaint) or flooding of water and sewage due to a "break or leak from the [Village] sewer system in the street into the basement of plaintiffs' residence" (Yules-Kenney complaint). The umbrella policy pollution exclusion clause excludes all bodily injuries and property damage arising out of the release in any form of a pollutant. As we have already demonstrated, those plaintiffs' causes of action would not have existed but for the dispersal of the pollutant. Hence, the umbrella policy pollution clause literally applies. Section 2 (f) (1) of the primary insurance policy pollution exclusion clause bars coverage for bodily injury or property damage arising out of any conceivable form of discharge, release or escape of pollutants

*306 "(a) At or from any premises, site or location which is or was at any time owned or occupied by * * * any insured * * *
"(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured."
Again, the allegations of the complaints fit unambiguously within either of the foregoing alternative scenarios of the pollution exclusion clause in the primary policy. They allege that the sewage (pollutant) was discharged or released from a sewer line (site) owned by the Village (insured) (see, Primary Policy § 2 [f] [1] [a]).[*] At the time of the release, the sewage (pollutant) was being disposed of as waste by the Village (insured) (see, id., § 2 [f] [1] [c]).
There is, thus, no facial ambiguity in the application of the policies' pollution exclusion clauses to the underlying complaints in this action. Ambiguity may also arise in a pollution exclusion clause, however, as to its application in the context of the circumstances giving rise to the underlying complaint (see, Continental Cas. Co. v Rapid-American Corp., 80 N.Y.2d 640, supra; see also, National Union Fire Ins. Co. v CBI Indus., 907 SW2d 517, supra). Thus, in Continental Cas. Co. v Rapid-American Corp., the policy's pollution exclusion clause broadly excluded all manner of releases or discharges of pollutants (including irritants and contaminants) "`into or upon land, the atmosphere or any water course or body of water'" (80 NY2d, at 647, supra). In Rapid-American Corp., the damages in the underlying complaint arose out of exposure to asbestos fibers, and we concluded that asbestos fibers plainly could be regarded as a pollutant, irritant or contaminant under the exclusion clause. Nonetheless, we found an ambiguity as to the application of the exclusion clause in the context of the claims in the underlying complaint. That is, we held that the clause was ambiguous as to whether a worker's inhalation (or absorption) of fibers from handling asbestos products in confined, inside work spaces constituted a discharge of asbestos in the "atmosphere" as contemplated by the exclusion clause (Continental Cas. Co. v Rapid-American Corp., 80 NY2d, at 653, supra). We also found ambiguity as to whether this kind of exposure was *307 the type of environmental pollution we read the exclusion clause as intended to cover, because of its use of such terms as "discharge," "dispersal" into or upon the land, the atmosphere, etc. (id., at 654).
No such ambiguity of application in context (as found in Continental Cas. Co. v Rapid-American Corp.) exists here. The escape, discharge, dispersal of raw sewage, as a result of a rupture or leak from a municipal sewer line, into the streets and then into buildings in the vicinity  as alleged here in the underlying complaints  is a paradigmatic case of "broadly dispersed environmental pollution" (Continental Cas. Co. v Rapid-American Corp., 80 NY2d, at 654, supra; see also, Town of Harrison v National Union Fire Ins. Co., 89 N.Y.2d 308 [decided today]). Thus, the pollution exclusion clauses in the Village's policies with the defendant insurer unambiguously apply facially and in the context of the circumstances giving rise to the underlying complaints.
Accordingly, I would reverse and declare that the insurer has no duty to defend or indemnify the Village in the underlying actions.
In each case: Order modified, etc.
NOTES
[*] Thus, under both the umbrella policy's pollution exclusion clause and under section 2 (f) (1) (a) of the primary policy, the exclusion clauses apply here irrespective of any ambiguity as to whether sewage constitutes "waste", as relied upon by the Appellate Division (223 AD2d 528, 529).