Levine, J.
(dissenting). I respectfully dissent. The gravamen of the majority’s decision for affirmance avoids consideration of the Appellate Division’s conclusion that the pollution exclusion clauses in plaintiff Village’s primary and umbrella commercial liability insurance policies are ambiguous with respect to whether raw sewage is a pollutant. Instead, the majority hinges its holding on an interpretation of the complaints in the underlying actions of Yules and Kenney against the Village, and Longwood Associates against the Village, as not specifically alleging that the claimed injuries in those cases were "pollution-related” and caused by "the 'polluting,’ irritating or contaminating nature of the sewage.” (Majority opn, at 299 [emphasis supplied].) Thus, according to the majority, the pollution exclusion clauses do not apply and defendant owes the Village a duty to defend the underlying actions because "any risk of liability faced by the Village allegedly arose from the flood-like nature of the discharge rather than its 'polluting’ character” (majority opn, at 300). This ground for affirmance was unpreserved and, in any event, is based upon a premise inconsistent with our precedents.
As to the preservation question, the Longwood Associates complaint does not mention flooding, but merely alleges "damages to the Property as a result of an overflow of sewage from the aforementioned sewage system.” While it is true that the Yules and Kenney complaint refers to the flooding of the Yules’ basement from a break in the Village’s sewer system, the "flooding”, versus contaminating effect of the escaped sewage was never the basis for the Village’s position that the pollution exclusion clauses did not apply, nor was this distinction, on *301 which the majority relies, the basis for the decisions of either of the courts below.
The affidavit of the Village’s attorney in support of its cross motion for summary judgment and in opposition to defendant’s motion to dismiss sets forth two grounds for asserting that defendant has a duty to defend: (1) that both of the complaints in the underlying actions against the Village contain allegations "relat[ing] to alleged [Village] negligence and a failure to maintain pipes and a sewer system, which is clearly covered under the subject 'liability’ insurance policy”; and (2) that there is an ambiguity in the pollution exclusion clauses "as to whether or not the subject 'pollution exclusion’ is intended to refer to 'human waste’, rather than hazardous and/or dangerous chemicals or other products which are normally the result of industry or man-made products.” The same affidavit sets forth two grounds for claiming that defendant also owes a duty to indemnify. The first is that the " 'pollution exclusion’ ” was intended to "deal with those companies, industrial corporations, etc., which are the actual polluters.” The second ground merely reiterates that "under any reasonable interpretation [of the pollution exclusion clauses] 'human waste’ or 'sewage’ was not and cannot be intended [pollutants] by the use of these words” (emphasis in the original). Again, in the Village’s reply to interrogatories, its grounds for avoiding, the application of the pollution exclusion clauses make no distinction between the flooding or polluting effect of the sewage released, but states that " 'human waste’ does not fit in the definition of 'Pollutants’ pursuant to the insurance policy” (emphasis in the original), and that the "terms and language of such exclusion * * * apply to 'man-made’ pollutants such as industrial waste and chemicals, etc. which are disposed of and/or dispersed by various business and/or manufacturing entities.”
Supreme Court based its decision on both of these arguments advanced by the Village, plus its conclusion that the Village was not an intentional polluter. Thus, the court relied upon the fact that the Village "is not an industrial or commercial enterprise that creates pollution or waste” (160 Misc 2d 795, 800), and that the elements of sewage are not "generally understood to be [pollutants] in ordinary usage (id., at 800), which are limited to a " 'chemical-like substance contained in the definition of pollutants or similar to those listed’ ” (id., at 800, quoting Oates v State of New York, 157 Misc 2d 618, 623). As already noted, the Appellate Division grounded affirmance on only one of the Village’s arguments, that "waste” in the *302 pollution exclusion clauses was ambiguous with respect to its application to raw sewage. Thus, the majority’s reliance on the absence of contamination-related damages was never the basis of the Village’s claim or of the decisions by the lower courts here.
The majority’s attempt to circumvent the foregoing demonstration of a clear-cut violation of our preservation jurisprudence is unavailing. The majority acknowledges (majority opn, at 299) that the Village’s claims of the duty to defend were based upon the allegations of municipal negligence in the underlying complaints and upon the contention that sewage was not a pollutant as defined in the pollution exclusion clause, but claims that its rationale for affirmance was inherent in those claims, and hence, the preservation requirement was met here. This inference is readily refuted.
It seems self-evident that the preserved issues, namely, whether the Village’s negligence was pleaded in the underlying complaints and whether sewage falls within the definition of pollutants in the pollution exclusion clauses, are entirely unrelated to whether the "contaminating nature” of sewage directly caused the damages claimed in the underlying complaints. Put another way, if the majority is correct that the pollution exclusion clauses do not apply in the absence of an explicit allegation of pollution-type damages in the underlying complaints (which concededly are not alleged), insurance coverage for the claims in the underlying complaints would exist here even if the Village’s negligence had not been alleged therein, and even if the actual substance that was discharged by the Village was an "acid[ ], alkali[ ] [or] chemical[ ]”, expressly named as a pollutant in the exclusion clauses. Hence, in no way are the positions taken by the Village before Supreme Court applicable to the issue made dispositive by the majority in its opinion.
Defendant, thus, has now been adjudged responsible to defend the Village in the Longwood Associates and YulesKenney actions without ever being put on notice of the objection relied upon by the majority. This is a fundamental departure from our preservation jurisprudence (see, Lindlots Realty Corp. v County of Suffolk, 278 NY 45, 51-52; Arc Eng’g Corp. v State of New York, 293 NY 819, 820; Cohen and Karger, Powers of the New York Court of Appeals §§ 162-164, at 629-634 [rev ed 1952]; see also, Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 64 NY2d 1049).
*303 Even if the Village had timely raised the differentiation relied upon by the majority between damages caused by the “flooding” of sewage as contrasted with damage caused by the contaminating effect of the sewage, it is, in my view, a distinction without a difference. The pollution exclusion clauses in this case are “absolute,” in that they expressly encompass all claims for bodily injury or property damage “arising out of the actual * * * or threatened discharge, dispersal, seepage, migration, release or escape of pollutants” (emphasis supplied), and contain no exception for the sudden or accidental discharge of pollutants, or any similar qualifying language such as a requirement that the discharge must be upon land, the atmosphere or any water course or body of water (see, American States Ins. Co. v Nethery, 79 F3d 473, 475; Red Panther Chem. Co. v Insurance Co. of State of Pa., 43 F3d 514, 518, n 3; National Union Fire Ins. Co. v CBI Indus., 907 SW2d 517, 518 [Tex]; cf., Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640).
Indisputably, raw sewage is a highly toxic contaminant, exposure to which is invariably dangerous to human life because of its biological content, which includes fecal coliform and other sewage-borne bacteria (see, East Quincy Seros. Dist. v Continental Ins. Co., 864 F Supp 976; see also, Royal Ins. Co. o Bithell, 868 F Supp 878). Exposure to fecal matter in sewage creates a grave risk of such virulent diseases as cholera, typhoid fever and hepatitis A (see, American Medical Association, Encyclopedia of Medicine, Infectious Disease, at 582-585 [1989]; American Public Health Association, Control of Communicable Diseases Manual, at 94-100, 217-220, 502-507 [16th ed 1995]). Thus, the necessary remediation of the entry of raw sewage into a home was described in Royal Ins. Co. v Bithell (868 F Supp, at 879, supra) as the removal and replacement of soil underneath and within 12 feet of the structure and the virtual gutting of the interior.
Therefore, there is no conceptual way to differentiate between the damage "arising out of” the flooding of premises with this morbidly hazardous contaminant, as alleged in the Yules-Kenney complaint and the overflow of sewage in the Longwood Associates complaint, and any other invasion of sewage into a human habitat. The majority’s real objection to the application of the pollution exclusion clauses, as already discussed, is that the injuries alleged in the underlying complaints (particularly the personal injuries of Yules and Kenney alleged to have been incurred in attempting to stop *304 the influx and rescue belongings), are not also alleged to be causally connected in any direct way with the contaminating quality of the sewage that flooded their premises. Whether the pleading of such a direct causal relationship in the underlying complaint is necessary under a policy exclusion which precludes coverage for damages "arising out of’ a given activity or state of affairs is a question of legal interpretation of the insurance contract upon which this Court has definitively spoken.
In Mount Vernon Fire Ins. Co. v Creative Hous. (88 NY2d 347, 350-351) and U.S. Underwriters Ins. Co. v Val-Blue Corp. (85 NY2d 821, 823), we held that the phrases "based on” and "arising out of” when used in insurance policy exclusion clauses are unambiguous and indistinguishable. We applied in both cases a "but-for” test to determine whether the "arising out of’ exclusion controls, that is, if no underlying cause of action could exist but for the existence of the excluded activity or state of affairs, the exclusion applies and there is no coverage (see, Mount Vernon Fire Ins. Co. v Creative Hous., supra, at 350; U.S. Underwriters Ins. Co. v Val-Blue Corp., supra, at 823).
Undoubtedly, the underlying complaints would not support a cause of action "but for” the intrusion of sewage into the plaintiffs’ buildings. Therefore, the pollution exclusion clauses control despite the absence of any pleaded direct causal link between the damages claimed in the underlying complaints and the contaminating properties of sewage unless, as the Appellate Division concluded, the clauses are ambiguous as to whether raw sewage is a pollutant.
Facially, in my view, the pollution exclusion clauses unambiguously include raw sewage as a pollutant. The clauses define pollutants as:
"any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
We construe insurance policy provisions, including exclusions, according to their plain and ordinary meaning (Goldman & Sons v Hanover Ins. Co., 80 NY2d 986, 987; United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232).
By plain meaning and general usage, sewage is a contaminant. The dictionary definition of contaminate is "to render unfit for use by the introduction of unwholesome or undesirable elements [as in] water contaminated by sewage” (Webster *305 Third New International Dictionary [Unabridged] 491 [1986] [emphasis in original]).
Sewage is designated a pollutant in the State’s Environmental Conservation Law (see, ECL 17-0105 [17]; 72-0601 [3], [4]). Sewage is named as a pollutant or contaminant under Federal statutes and regulations (see, 33 USC § 1362 [6]; 36 CFR 327.9). It also falls within the definition of hazardous waste under Federal legislation (see, 42 USC § 6903 [5] [B] [defining hazardous waste as "a solid wastes, or combination of solid waste, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may * * * pose a substantial present or potential hazard to human health” (emphasis supplied)]). Most courts have held that sewage is covered under standard insurance policy pollution exclusion clauses, as a pollutant, contaminant, irritant or waste (see, Titan Holding Syndicate v City of Keene, 898 F2d 265; Royal Ins. Co. v Bithell, 868 F Supp 878, supra; East Quincy Servs. Dist. v Continental Ins. Co., 864 F Supp 976, supra; City of Salina v Maryland Cas. Co., 856 F Supp 1467; Blackhawk Central City Sanitation Dist. v American Guar. & Liab. Ins. Co., 856 F Supp 584; Headley v St. Paul Fire & Mar. Ins. Co., 712 F Supp 745; contra, Florida Farm Bur. Ins. Co. v Birge, 659 So 2d 310 [Fla App]; Minerva Enters. v Bituminous Cas. Co., 312 Ark 128, 851 SW2d 403).
Once sewage is correctly identified as a pollutant because of its universally acknowledged qualities as a contaminant and as hazardous waste, the release of sewage and its ultimate infiltration of the Longwood Associates’ and Yules’ properties as alleged in their complaints unambiguously fall within the policy exclusion clauses. Their complaints alleged damages stemming from an "overflow” of sewage from the Village’s sewage system (Longwood Associates complaint) or flooding of water and sewage due to a "break or leak from the [Village] sewer system in the street into the basement of plaintiffs’ residence” (YulesKenney complaint). The umbrella policy pollution exclusion clause excludes all bodily injuries and property damage arising out of the release in any form of a pollutant. As we have already demonstrated, those plaintiffs’ causes of action would not have existed but for the dispersal of the pollutant. Hence, the umbrella policy pollution clause literally applies. Section 2 (f) (1) of the primary insurance policy pollution exclusion clause bars coverage for bodily injury or property damage arising out of any conceivable form of discharge, release or escape of pollutants
*306 "(a) At or from any premises, site or location which is or was at any time owned or occupied by * * * any insured * * *
"(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured.”
Again, the allegations of the complaints fit unambiguously within either of the foregoing alternative scenarios of the pollution exclusion clause in the primary policy. They allege that the sewage (pollutant) was discharged or released from a sewer line (site) owned by the Village (insured) (see, Primary Policy § 2 [fl [1] [a]).* At the time of the release, the sewage (pollutant) was being disposed of as waste by the Village (insured) (see, id., § 2 [f] [1] [c]).
There is, thus, no facial ambiguity in the application of the policies’ pollution exclusion clauses to the underlying complaints in this action. Ambiguity may also arise in a pollution exclusion clause, however, as to its application in the context of the circumstances giving rise to the underlying complaint (see, Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, supra; see also, National Union Fire Ins. Co. v CBI Indus., 907 SW2d 517, supra). Thus, in Continental Cas. Co. v Rapid-American Corp., the policy’s pollution exclusion clause broadly excluded all manner of releases or discharges of pollutants (including irritants and contaminants) " 'into or upon land, the atmosphere or any water course or body of water’ ” (80 NY2d, at 647, supra). In Rapid-American Corp., the damages in the underlying complaint arose out of exposure to asbestos fibers, and we concluded that asbestos fibers plainly could be regarded as a pollutant, irritant or contaminant under the exclusion clause. Nonetheless, we found an ambiguity as to the application of the exclusion clause in the context of the claims in the underlying complaint. That is, we held that the clause was ambiguous as to whether a worker’s inhalation (or absorption) of fibers from handling asbestos products in confined, inside work spaces constituted a discharge of asbestos in the "atmosphere” as contemplated by the exclusion clause (Continental Cas. Co. v Rapid-American Corp., 80 NY2d, at 653, supra). We also found ambiguity as to whether this kind of exposure was *307 the type of environmental pollution we read the exclusion clause as intended to cover, because of its use of such terms as "discharge,” "dispersal” into or upon the land, the atmosphere, etc. {id., at 654).
No such ambiguity of application in context (as found in Continental Cas. Co. v Rapid-American Corp.) exists here. The escape, discharge, dispersal of raw sewage, as a result of a rupture or leak from a municipal sewer line, into the streets and then into buildings in the vicinity — as alleged here in the underlying complaints — is a paradigmatic case of "broadly dispersed environmental pollution” (Continental Cas. Co. v Rapid-American Corp., 80 NY2d, at 654, supra; see also, Town of Harrison v National Union Fire Ins. Co., 89 NY2d 308 [decided today]). Thus, the pollution exclusion clauses in the Village’s policies with the defendant insurer unambiguously apply facially and in the context of the circumstances giving rise to the underlying complaints.
Accordingly, I would reverse and declare that the insurer has no duty to defend or indemnify the Village in the underlying actions.
Judges Simons, Bellacosa and Ciparick concur with Judge Smith; Judge Levine dissents and votes to reverse in a separate opinion in which Chief Judge Kaye and Judge Titone concur.
In each case: Order modified, etc.

 Thus, under both the umbrella policy’s pollution exclusion clause and under section 2 (f) (1) (a) of the primary policy, the exclusion clauses apply here irrespective of any ambiguity as to whether sewage constitutes "waste”, as relied upon by the Appellate Division (223 AD2d 528, 529).